## A00A2540. KELLEY v. THE STATE.
(548 SE2d 357)

SMITH, Presiding Judge.

This appeal arises out of the trial court's imposition of a sentence following a jury trial in which Kenneth Jeffrey Kelley was convicted of aggravated assault and battery. Kelley contends that he should have been sentenced only on the battery conviction. Kelley, who had previously entered a guilty plea to charges of aggravated assault and aggravated battery but had withdrawn the plea, also argues that the trial court erroneously imposed a greater sentence following the trial of the case than was imposed following his guilty plea. We find no error with respect to either of these arguments, and we affirm.

Kelley was indicted on charges of aggravated assault (OCGA § 16-5-21) and aggravated battery (OCGA § 16-5-24). The case went to trial, but following the testimony of several of the State's witnesses, he entered into a negotiated guilty plea to both charges. The trial court sentenced Kelley to 20 years on the aggravated assault charge, with five to be served in prison and the remainder on probation. He received the same sentence on the aggravated battery conviction, to run concurrently with the sentence imposed on the aggravated assault conviction. The court allowed Kelley to serve the sentence as a first offender. Kelley subsequently filed a motion to withdraw the plea and by consent order was permitted to do so.

Kelley was then tried by a jury and convicted of aggravated assault and battery. He was sentenced to 15 years on Count 1, the aggravated assault charge, with ten to be served in prison and the balance on probation. He was sentenced to 12 months on the battery conviction, to run concurrently with the sentence imposed on Count 1. From this sentence he appeals.

1. Kelley first contends that he "was improperly sentenced for the offense of aggravated assault as the jury found him guilty of the lesser included misdemeanor offense of battery as set forth in the court's charge to the jury."

This case arose out of a barroom incident during which Kelley struck the victim on the head with a beer mug, fracturing the victim's skull and requiring surgery to remove bone fragments from his brain. Count 1 of the indictment against Kelley charged him with committing aggravated assault in that he assaulted the victim with "a glass beer mug, which, when used offensively against another person is likely to result and did result in serious bodily injury." In Count 2, he was charged with the offense of aggravated battery by maliciously causing "bodily harm to [the victim] by seriously disfiguring a member of his body."

Kelley's argument on appeal arises out of the trial court's charge to the jury concerning the law related to these counts. The trial court

defined "assault" as an attempt to commit a violent injury to another person or an act placing another person in reasonable apprehension of immediately receiving a violent injury. The court then explained that a person commits aggravated assault when he or she assaults another person with a deadly weapon or with a "device or instrument, which when used offensively against a person is likely or actually does result in serious bodily injury."

In a similar manner, the court instructed the jury on the law concerning aggravated battery, tracking the applicable language of OCGA § 16-5-24. The court also correctly defined battery, stating that "[a] person commits the offense of battery when that person intentionally causes substantial physical harm or visible bodily harm to another." See OCGA § 16-5-23.1 (a).

The court then charged the jury that if it believed Kelley to have committed aggravated assault, it would be authorized to find him guilty but that if the jury had a reasonable doubt as to his guilt, it would be the jury's duty to acquit him. The court presented a third option to the jury, instructing the jury that "[i]f you do not believe beyond a reasonable doubt that the Defendant is guilty of aggravated assault but do believe beyond a reasonable doubt that the Defendant is guilty of battery, then you would be authorized to find the Defendant guilty of battery."

With respect to the aggravated battery charge, the trial court similarly instructed the jury that if it believed Kelley to have committed the crime of aggravated battery, it would be authorized to convict him of that charge but that if it had a reasonable doubt concerning his guilt, it must acquit him on the charge of aggravated battery. Also, just as the court instructed the jury concerning the possibility of convicting Kelley of battery on the aggravated assault charge, the court stated that if the jury did not believe beyond a reasonable doubt that Kelley was guilty of aggravated battery but did believe beyond a reasonable doubt that he was guilty of the lesser included offense of battery, the jury would be authorized to convict him of battery. The court then explained the verdict form to the jury, stating that "three possible verdicts" existed for each count: not guilty, guilty, or guilty of battery.

Kelley argues that under this charge, "the jury was instructed that a finding of guilty on battery equated to a finding of not guilty on the felonies charged in both counts" and that because he was found guilty of battery on Count 2, he "must be determined to have been found not guilty of the offense of aggravated assault." We do not agree. The import of the trial court's instructions was not that a finding of guilty of battery on either count authorized a finding of not guilty on both felonies. The court clearly, specifically, and separately charged the jury concerning each count and instructed the jury that

with respect to each count, it might be authorized to find Kelley guilty of battery. The charge was not unclear or ambiguous concerning the options given the jury or the effect of a finding of a guilty verdict on the lesser included offense of battery.

Furthermore, the verdict form provided clear options to the jury. The form gave the jury three choices with respect to each count. As to Count 1, the verdict form permitted the jury to find Kelley not guilty, guilty, or "not guilty of aggravated assault but guilty of battery." Similarly, with respect to Count 2, the form provided that the jury could find Kelley not guilty, guilty, or "not guilty of aggravated battery but guilty of battery." The form was clearly marked by the jury finding Kelley "guilty" of aggravated assault and "not guilty of aggravated battery but guilty of battery." While a defendant is certainly "entitled to the benefit of the doubt in the construction of an ambiguous verdict [cit.]," *Lindsey v. State*, 262 Ga. 665, 666 (1) (424 SE2d 616) (1993), the verdict here unambiguously showed that Kelley was convicted of both aggravated assault and battery. We find no error.

We note Kelley's "suggestion" in his appellate brief "that he could not have been sentenced on two counts of battery had he been convicted on battery as a result of the two counts as there was in actuality only one 'battery.' " But he was not convicted of battery on each count. He was convicted on one count of aggravated assault and one count of battery.

The jury's finding of aggravated assault on Count 1 was clearly supported by the evidence. The State showed that Kelley assaulted the victim with an object, here, a beer mug, which when used offensively against a person could result in serious bodily injury. This constituted evidence of aggravated assault as defined by OCGA § 16-5-21 (a) (2). Physical contact is not a required element of aggravated assault. *Anderson v. State*, 170 Ga. App. 634-635 (317 SE2d 877) (1984). Battery has different elements. As defined in OCGA § 16-5-23.1, it requires the State to show that a defendant intentionally caused "substantial physical harm or visible bodily harm to another." The State presented ample evidence of Kelley's intent to cause such harm to the victim.

Finally, we note that even if, as suggested by Kelley, the trial court were required to merge the aggravated assault conviction and the battery conviction, the court would have been authorized to merge the misdemeanor into the felony, rather than vice versa. See *Helmeci v. State*, 230 Ga. App. 866, 869-870 (3) (498 SE2d 326) (1998).

2. Kelley also contends that the trial court erroneously increased his sentence from that entered following his guilty plea, in violation of *North Carolina v. Pearce*, 395 U. S. 711 (89 SC 2072, 23 LE2d 656) (1969). In *Pearce*, the Supreme Court stated that when a defendant

has successfully attacked a guilty verdict and has been found guilty upon retrial, if the trial judge imposes a greater sentence following retrial than that previously entered, the judge's

> reasons for . . . doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Id. at 726. Under *Pearce*, the failure to state on the record reasons for enhancing a sentence raises a presumption that the trial court's motive for increasing the sentence was vindictive. As discussed above, after he pled guilty, Kelley was sentenced to 20 years, with five to be served in prison and the remainder on probation. Following his trial, he was sentenced to 15 years, with ten to serve and the remainder on probation. Kelley contends that the second sentence violates *Pearce*, arguing that "there is *no* evidence of any aggravating nature which occurred between imposition of the first and second sentences."

We first note that in *Alabama v. Smith*, 490 U. S. 794 (109 SC 2201, 104 LE2d 865) (1989), the Supreme Court found *Pearce* to be inapplicable to the circumstance where an accused pled guilty and was sentenced, but later went to trial and received a greater sentence than that imposed after the guilty plea. The Court expressly held that "when a greater penalty is imposed afer trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." Id. at 801. Consequently, *Pearce* does not apply in this case. We note that neither Kelley nor the State makes any mention of *Smith* in their appellate briefs.

Furthermore, even if *Pearce* were applicable, the trial court discussed at fairly great length the reasons for its sentence. The court stated that during "the last hour or hour and a half, two hours," it "kept looking" for a showing of remorse. The court noted that Kelley "took somebody's skull off" and that even if Kelley's defense was justification, he could still be remorseful that he had so injured the victim. The court also discussed a remark that Kelley had made while testifying. Kelley referred to the victim and other men with the victim as "the prosecutor's three dudes." The court stated that this remark by Kelley reflected "a great deal about your attitude toward those three men." The court also noted that Kelley showed resent-

ment toward the victim, a foreigner. The trial court sufficiently stated the reason for the sentence, and we can safely determine that the sentence was not based on any vindictive motive of punishing Kelley for proceeding to trial.

We find no error with respect to the sentences imposed upon Kelley, and we therefore affirm.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 6, 2001 —
RECONSIDERATION DENIED MARCH 22, 2001 — 

*Banks, Stubbs, Neville & Cunat, Rafe Banks III*, for appellant.

*Philip C. Smith, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.