A09A0065. TOWNES v. THE STATE.
(679 SE2d 772)

BARNES, Judge.

A jury convicted Darian Townes of four counts of aggravated assault, burglary, theft by taking, and carrying a concealed weapon, and the trial court sentenced him to serve 111 years in confinement, the maximum time possible. Townes appeals, contending the trial court abused its discretion, considering that it said on the record

before trial that it thought the State's recommendation of twenty years to serve ten in confinement was reasonable. For the reasons that follow, we affirm.

Townes was charged with four counts of aggravated assault, burglary, carrying a concealed weapon, and theft by taking. At a pretrial conference, the State summarized the case against Townes, the facts of which were later confirmed and amplified at trial. One evening around 8:30 p.m., Townes came to the apartment where his mother and sister lived and began firing a .9 mm handgun into the front door. The two victims hid in a bedroom closet, and Townes walked away from the door into the parking lot, then turned and fired again at the apartment building. Several shots went into a neighbor's apartment, and in all Townes unloaded a full clip plus a bullet in the chamber, totalling 16 shots. Townes took his mother's car and when stopped four days later, the arresting officer found a loaded .38 caliber handgun under the driver's seat. After discussion with Townes' mother, who indicated Townes had mental health issues and experienced "outbursts" when he went off his medication, the State changed its recommendation from thirty years to serve to ten years to serve followed by ten years on intensive probation with mental health counseling, and a court order to continue any prescribed medication. Townes had convictions related to three prior incidents, two of which also involved his mother who was the victim of both simple battery and simple assault.

Before hearing from defense counsel, the court noted that this was "an extremely serious case" and it might vary the sentence. Defense counsel explained that Townes realized he put everyone in a very dangerous situation and needed to stay on his medication even when he felt better. The trial court responded, "[U]nder the circumstances, [it] would follow the recommendation, and once he's released, . . . he would have to submit to a psychiatric evaluation and abide by any terms and conditions of the psychiatrist." Townes' counsel conferred with him, and then stated for the record, "As far as Darian Townes, he wants me to just announce ready." The court marked the case as ready for trial.

Three days after the pretrial hearing, the trial court ordered a mental health evaluation to determine Townes' competency to stand trial and his criminal responsibility when the incident occurred. A doctor of psychology employed by the Georgia Department of Human Resources, Mental Health Division, examined Townes and found first that he was aware of the nature and objective of the legal proceedings against him. He correctly defined the concept of a plea bargain, understood that he was being offered "10 years" and knew that he could be sentenced to "a lot, like a 100 years" if he were convicted of the offenses for which he was charged. Regarding

Townes' responsibility for his behavior when the incident occurred, the doctor found no evidence Townes had been suffering from a delusional compulsion or was unable to distinguish between right and wrong.

Townes' case was called for trial on October 17, 2006. He chose to wear his orange prison jumpsuit the first day despite the advice of his lawyer and the trial court encouraging him to wear street clothes, stating that he wanted the jury to see him in jail because he thought he was innocent. During a break in the voir dire, the court reviewed the mental health evaluation, and informed Townes that it would sentence him to a straight ten years to serve in confinement, with no probation, if he wanted to plead guilty. The prosecutor responded that, although she thought Townes deserved a much longer sentence, she would not oppose the ten-year sentence. Townes declined the offer, instead complaining that he and his defense counsel were "not seeing eye to eye," that he was not getting "fair representation," and he asked her about seeking a "lesser recommendation" and arguing his case under "the legislature statute [sic]" but his counsel refused. The trial court noted that it would not remove the defense counsel at that point, and confirmed that Townes wanted to proceed with the trial.

Townes' mother testified that her relationship with Townes had been strained for a long time, primarily over finances. In March 1998 Townes forced his way into her house, and she called 911 for fear he would attack her. Two months later he hit her, and in November 2000 he kicked her door in. She moved into a gated community because she was afraid of Townes, but the gate only kept out cars, not foot traffic. The evening of the incident for which Townes was on trial she heard a knock at the door but could not see anyone there. Her 16-year-old daughter saw Townes through the window and urged her mother to hide. As the mother walked into her bedroom she heard gunshots at the door and thought Townes was going to kill her. She told her daughter, who was crying in fear of her life, to hide in the closet, and the mother retrieved her cell phone and mace before joining her in the closet. The mother called 911 and the apartment was quiet for a time. A neighbor who heard the shots saw Townes walk away from the building then turn back, firing into the house and shattering glass. The mother heard her patio door shatter and Townes came inside, where he fired more shots into the hall closet and through the dining room wall.

The two next-door neighbors, on the phone with 911 after hearing the first set of shots, saw bullets flying into their living room, ducked low, and ran into the back of their apartment, not knowing where the bullets had come from. Townes took the keys to his mother's car and drove off before the police arrived. Five bullets

were retrieved from the neighbor's apartment, five bullet holes were found in the mother's front door, and another bullet went through the hall closet door and through a leather jacket hanging inside. Officers retrieved shell casings and bullets from the hallway and the two apartments, and Townes was arrested when a patrol officer pulled him over for speeding, weaving, and driving without a license tag. The jury heard tapes of the 911 calls made by the mother, daughter, and neighbors.

The jury convicted Townes of four counts of aggravated assault, against his mother, his sister, and the two next-door neighbors. After polling the jury, the trial court was discussing Townes' sentencing hearing when the transcript ends mid-sentence and the court reporter notes: "Whereupon, the defendant, Darian Townes, while being instructed by deputy sheriffs to stand up at counsel table at the conclusion of the trial proceedings, stood up and turned and struck [his trial counsel] across the face, at which point the deputy sheriffs yelled clear the courtroom."

At his sentencing hearing a month later, Townes was represented by new counsel. The trial court first directed the deputies to move the spectators back off the first row because Townes had fought with the deputies that morning. Townes' mother testified that she would like the court to consider her son's mental health issues in sentencing him, but the court noted that he had been examined and found competent, and no issues arose at trial regarding Townes' mental status.

The prosecutor introduced evidence of Townes' previous convictions, for simple battery, obstruction of an officer, criminal trespass, simple assault, and battery. He also introduced into evidence a letter Townes sent his mother from jail, after he was arrested and before trial, in which he said he had been sitting in his cell wondering why he had spared her life and cursing her, and asked the judge to consider what had taken place during the trial. The State recommended that Townes be sentenced to the maximum amount of time possible, 111 years, because of his prior convictions, his attitude toward his mother, the escalation of his actions, his indifference to the neighbors' well-being, the jury's finding that he was guilty of burglary with the intent to commit the felony of murder, his attack of his public defender at the end of the trial, and his danger to women and to the community.

Townes' counsel pointed out that the State had offered before trial to recommend a sentence of ten years to serve in exchange for Townes' guilty plea,[1] and argued that Townes had been diagnosed as

---

[1] Although the trial court stated at sentencing it never would have followed that recommendation, the transcript of the pretrial hearing establishes that the court said, "Under

schizophrenic and committed these crimes because he had been off his medications. The trial court reviewed the evidence presented at trial, including the mother's testimony that she had moved to find safety, that the neighbors had been crawling around their own apartment to avoid gunfire, and that Townes' attack on his public defender was unprovoked. The 911 tapes of Townes' mother and sister "in absolute terror" were "the most chilling thing [the court had] heard in [its] 20 years of experience on the bench," and the court believed Townes was a menace to society. Accordingly, the court sentenced Townes to the maximum sentence allowed: twenty years on each aggravated assault count, twenty years on the burglary charge, ten years on theft by taking, and twelve months on the concealed weapons charge, all to be served consecutively in confinement.

Townes argues on appeal the trial court abused its discretion in sentencing him after trial to more than ten times the length of the sentence it agreed to impose before trial, thus punishing him for exercising his constitutional right to a trial by jury. Thus, he argued, it was "apparent that the trial court failed to use any discretion in imposing sentence, and allowed vindictiveness to play a role in sentencing," citing *North Carolina v. Pearce*, 395 U. S. 711 (89 SC 2072, 23 LE2d 656) (1969), and *Wnek v. State*, 262 Ga. App. 733 (586 SE2d 428) (2003). *Pearce*, however, applies to a defendant whose first conviction is set aside, was retried, and then was given a longer sentence. Under those circumstances, the increased sentence was more likely than not attributable to a presumption of vindictiveness, absent evidence attempting to justify the increase. And in *Wnek*, we remanded for resentencing when the trial court stated on the record that it never granted First Offender treatment to a defendant who went to trial instead of pleading guilty, and thus never exercised its discretion in that regard.

In *Alabama v. Smith*, 490 U. S. 794 (109 SC 2201, 104 LE2d 865) (1989), the Court determined that the presumption of vindictiveness was absent when a trial court imposes a greater penalty after trial than it would have after a guilty plea. "[I]n the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation." (Citations omitted.) Id. at 801. Further, a guilty plea may justify leniency, a justification absent if the case proceeds to

---

the circumstances, I would follow the recommendation" of the State to sentence Townes to ten years in custody followed by ten years on probation. At trial the court even offered to let Townes plead to a straight ten years in custody with no probation, but Townes rejected the offer.

trial. Id. at 802.

> A criminal defendant should not be allowed to reject a sentence concession that is offered in return for a guilty plea and then bind the State to that rejected original lenient sentence even though he is later convicted after a trial. To hold otherwise would allow a criminal defendant to go to trial and seek an acquittal knowing that, even if unsuccessful, he would receive a sentence which is no less lenient than that which he was originally offered. After trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present.

(Citation and punctuation omitted.) *Price v. State*, 281 Ga. App. 844, 846 (2) (637 SE2d 468) (2006).

The trial court's statements at the sentencing hearing indicate that the sentence was based on evidence that Townes' actions were life-threatening to the targeted victim and anyone else who happened to be nearby, that the jury convicted him of entering the dwelling with intent to commit murder, that his actions against this victim had escalated from his previous misdemeanor crimes, and that he displayed no remorse. Because no presumption of vindictiveness applies and the trial court explained its reasons for the lengthy sentence imposed, which was within the statutory limits, we affirm the convictions. See *Kelley v. State*, 248 Ga. App. 721, 724 (2) (548 SE2d 357) (2001); *West v. State*, 241 Ga. App. 877, 878-879 (528 SE2d 287) (2000).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 3, 2009.

*Carl P. Greenberg*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

