**SECOND DIVISION
BARNES, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A2509. WISE v. THE STATE.

BARNES, Presiding Judge.

Following his conviction for possession of cocaine with the intent to distribute, Derrick Wise appeals from the denial of his motion for new trial. On appeal, Wise enumerates multiple claims of errors, including that the trial court erred in denying his motion to suppress, that similar transaction evidence was improperly admitted, and that the trial court erred in denying his motion to enforce a plea agreement. Following our review, and for the reasons that follow, we affirm.

"On appeal, we must view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence

or determine witness credibility." *Peters v. State*, 281 Ga. App. 385 (1) (636 SE2d 97) (2006).

So viewed, the evidence shows that on February 8, 2002, an Atlanta City police plainclothes detective was on patrol when he noticed a man standing in bushes near an apartment complex. The detective asked him if he lived there and the man responded that he did, pointed "toward the front of the complex," and walked away. The detective drove off, then circled back around and saw the same man reaching into the bush he was standing near earlier. He saw the detective, and "whatever he had in his hand, he put it back [in the bush] and walked on out, ran out." After the man left, the detective retrieved a bag containing 191 hits of crack cocaine from the bush. He was able to identify the man as possibly being nicknamed "Shaq." Later, after a another officer recognized the street name and physical description and showed the detective a picture of the suspect, the detective positively identified Wise as the man he saw reach into the bushes.

Police obtained an arrest warrant for Wise. On February 18, 2002, an officer was in the area of the apartments and saw Wise come out of an apartment door. The officer called for an arrest team to assist with executing the warrant. Several officers surrounded the apartment while the officer knocked on the door. He knocked for

approximately 35 minutes, and when he did not get an answer, the officer got a key to the apartment from the manager. The key did not work, so he notified his supervisor that Wise was refusing to answer the door, and then used a sledgehammer to break in the door. Wise was found in a rear bedroom and "pretended to be asleep." There were two young children with him. Wise was indicted for and later convicted of possession of cocaine with intent to distribute.

1. Wise first contends that the trial court erred when it denied his motion to "suppress his arrest." He maintains that the arrest warrant was not valid, that the warrant did not authorize police to arrest Wise in his home, and that the officers did not adhere to constitutional procedure in executing the arrest. On appeal from the denial of a motion to suppress in which the evidence is uncontroverted, we review the trial court's application of the law to the undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

None of the arguments Wise makes on appeal, however, were presented in his written motion, argued before the trial court, or ruled on below. Shortly before the trial, Wise filed a "motion to suppress identification" in which he argued that the pre-trial identification procedure used was constitutionally flawed in that the evidence did not establish how police had identified Wise as being the suspect named "Shaq." He

also filed a general motion to suppress evidence of the cocaine found in the bushes, in which he argued in general terms that the evidence was inadmissible because it was incident to an illegal detention. On the first day of the trial, the trial court held a hearing on the motion to suppress. Wise argued that his pre-trial identification should be suppressed because the police report did not establish "how Shaq was identified as Derrick Wise," and also that he had never received a copy of the arrest warrant. The trial court asked Wise if he wanted to keep the arrest warrant out, and Wise responded that he did not know because he had not looked at the warrant, and did not know what information it contained. The State interjected that because of the seven-year lapse it also did not know how Wise was identified, and thus had met with the officers involved and tracked down the arrest warrant.

The trial court ruled that it would not suppress evidence of Wise's pre-trial identification, upon verifying that the warrant was referenced in the police report, and ruled that "the warrant [could] come in as well." The trial court directed the State to provide Wise with a copy of the arrest warrant.

At the opening of the second day of trial, Wise renewed his motion to suppress, and the trial court held another hearing on the motion. Wise called the detective who saw Wise put the drugs in the bushes and who had initiated the investigation that led

to the issuance of the arrest warrant. He questioned the detective about the facts leading up to the identification of Wise as the person known as "Shaq," and the circumstances leading up to acquiring the arrest warrant. Afterward, Wise again argued that his identification should be suppressed because the officers had identified him by merely "a canvassing of the street, getting the name 'Shaq,' going to the police department, kicking it around with [another] officer. . . and submitting to this officer that that was the individual." He further complained that he did not have the picture that the officer used to identify him. The trial court again denied the motion to suppress Wise's pre-trial identification.

On appeal, however, Wise does not argue that the trial court erred in denying his motion to suppress evidence regarding his pre-trial identification. Instead, he argues issues related to the issuance and execution of the arrest warrant.

"Issues not raised in the trial forum in any form calling for a ruling will not be considered on appeal, for this is a court for correction of errors made by the trial court." (Citations and punctuation omitted.) *Romano v. State*, 193 Ga. App. 682 (1) (388 SE2d 757) (1989). Moreover, a motion to suppress must be made "in writing and state facts showing that the search and seizure were unlawful," OCGA § 17-5-30 (b), to properly place the State on notice of the legal issues to be resolved. *State v. Gomez*,

5

266 Ga. App. 423, 425 (2) (597 SE2d 509) (2004). "Neither in his motion nor at the hearing did [Wise] challenge the validity of the arrest warrant." *Seaman v. State*, 214 Ga. App. 878, 879 (1) (449 SE2d 526) (1994). For these reasons, we do not consider Wise's challenge to the denial of his motion to suppress. See *Young v. State*, 282 Ga. 735, 737 (653 SE2d 725) (2007).

2. Wise next contends that the trial court erred by allowing the State to present evidence to the jury that the reason for the seven-year delay in his trial was because of his bond forfeiture. We do not agree.

The record demonstrates that the State indicated that it planned to introduce evidence of Wise's bond forfeiture status and the fact that he was picked up on a bench warrant to explain why it had taken seven years for the case to come to trial. Wise objected, arguing that the 2005 trial notice sent to him had been returned and thus he had not gotten notice of the trial, and that should the State be allowed to introduce evidence that he had forfeited his bond, his character would be put into question because the implication would be that he had attempted to flee. The trial court ruled that the State could use the information to explain the delay in the trial and the circumstances of the arrest. We find no error.

6

"The State is entitled to offer evidence of flight while a defendant is awaiting trial and argue that it demonstrates consciousness of guilt. [Cits.]" *Turner v. State*, 237 Ga. App. 642, 644 (3) (516 SE2d 343) (1999). "Further, evidence that the defendant forfeited his appearance bond is admissible as tending to show flight." (Citations and punctuation omitted.) *Scott v. State*, 216 Ga. App. 692, 693 (2) (455 SE2d 609) (1995) (physical precedent only.); *Johnson v. State*, 148 Ga. App. 702, 703 (1) (252 SE2d 205) (1979). We find no plausible reason why the same evidence cannot be used for a much less prejudicial purpose– to explain a seven-year delay in bringing the case to trial. Although Wise maintained that the fact that the 2005 trial notice was returned showed that he did not know about his trial date, as the trial court noted, it was Wise's "responsibility to keep the court informed as to his address," and he was aware that "these criminal cases were out there pending."

3. Wise contends that the trial court erred in holding that he could not impeach the arresting officer with alleged prior bad acts committed by the officer, which deprived Wise of the opportunity to introduce "crucial rebuttal" evidence. During cross-examination of the officer who served the arrest warrant, he was asked if "Wise ha[d] ever made any kind of official or . . . internal affairs complaints against you." Over the State's objection, which the trial court overruled, the officer responded that

7

he did not know. The officer, who at the time of the trial was assigned to internal affairs, was then asked about the process of making an internal affairs complaint. After the State objected to the relevance of the questioning, the trial court sustained the objection and directed that Wise could only ask the officer about his specific duties in that department.

Later, Wise asked the officer is it "your testimony that you don't have any recollection of any complaint against you by Derrick Wise?" The officer responded, "That is my testimony." Wise then asked, "were you ever involved in a situation where you kicked in the door of Derrick Wise's mother's house?" When the State objected on the basis that the officer had testified that he did not know of any complaint, Wise responded "This is separate. Depending on his answer, I've got an eyewitness outside who would love to be in here." The State objected, and after a bench conference, the trial court excused the jury.

The trial court then admonished Wise for the improper comment, and instructed that if Wise was attempting to expose some bias that the officer had toward him, then he should ask questions that were relevant and related to the present proceedings. During the ensuing discussion, Wise revealed that he wanted to ask the officer about a 1996 incident in which the officer had allegedly kicked in the door to Wise's

8

mother's house to serve a criminal trespass warrant, and that depending on how he answered the question, Wise's mother was available to testify about the incident.

Wise contended that the incident six years earlier was relevant to the 2002 arrest because it demonstrated that the officer had been "after him" for a while. When asked if the officer had ever been involved in any of Wise's drug arrests, Wise admitted that he had not, but said that the officer had harassed him in the past. Wise also admitted that the detective had initiated the drug arrest in the instant case, rather than the testifying officer who had merely executed the warrant, and that his mother had not actually filed a complaint about the alleged 1996 incident. He further admitted that the 1996 arrest warrant was valid when the officer allegedly kicked his mother's door in "so he had the right to do it."

> The trial court ruled that Wise could not
>
> go into the this [1996] incident that allegedly occurred. . . .There is no written record of it. You are not trying to use it as a specific bad act. You stated to the court the warrant was valid at the time of this alleged bad act. That the police officer had the right to do it. I don't understand the relevance of it, and I'm not going to allow it.

To impeach a witness and thereby attack his credibility, one may disprove "the facts testified to by him." Former OCGA § 24-9-82. Here, as the trial court found,

there was no showing made that the excluded testimony contradicted any testimony made by the officer or statements "previously made by [the officer] as to matters relevant to his testimony and to the case." Former OCGA §§ 24-9-82, 24-9-83,[1] *Campbell v. Cozad*, 207 Ga. App. 175, 176 (2), 178 (427 SE2d 515) (1993). The alleged 1996 incident was, at best, "related solely to specific bad acts and not to the general bad character of the [witness]." *Heaton v. State*, 214 Ga. App. 460, 461 (2) (448 SE2d 49) (1994). Testimony regarding such specific bad acts was not admissible for impeachment purposes. *Wetta v. State*, 217 Ga. App. 128, 130 (3) (456 SE2d 696) (1995).

Moreover, as noted earlier, the testimony demonstrated the officer was acting on a valid arrest warrant at the time he allegedly kicked in the door to Wise's mother's house. This proffered single incident does not reveal *misconduct* toward Wise to the extent that it would support his allegation that the officer was biased.

Accordingly, the trial court did not err in refusing to admit the evidence.

---

[1]At the time of Wise's trial, OCGA § 24-9-83 provided as follows regarding the admission of extrinsic evidence of prior inconsistent statements by a testifying witness: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, . . . the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. . . ."

10

4. Wise also contends that the trial court erred in allowing similar transaction evidence. Specifically, he contends that the similar transactions – a March 1995 guilty plea for possession of crack cocaine, a September 1995 guilty plea for possession of cocaine, an April 2001 guilty plea for possession of crack cocaine, and a February 2004 arrest for possession with intent to distribute cocaine – were not admitted for an appropriate purpose, and were not factually similar to the case in chief. We disagree.

We will not disturb a trial court's ruling that similar transaction evidence is admissible absent an abuse of discretion. *Anderson v. State*, 261 Ga. App. 456, 461 (3) (582 SE2d 575) (2003).

> [S]imilar transaction evidence is admissible if the State establishes that (1) the evidence is admitted for a proper purpose; (2) sufficient evidence shows that the accused committed the separate act; and (3) there is sufficient connection or similarity between the separate act and the offense charged that proof of the former tends to establish the latter.

(Citation and footnote omitted.) *Clark v. State*, 272 Ga. App. 89, 90 (611 SE2d 741) (2005). Likewise in drug cases, "[i]f the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity,

11

motive, plan, scheme, bent of mind, or course of conduct. (Citation and punctuation omitted.) *Roberts v. State*, 241 Ga. App. 259, 261 (3) (526 SE2d 597) (1999).

In this case, the evidence established that in the March and September 1995 transactions, Wise pled guilty to possession after crack cocaine was discovered in his underwear. The evidence from the April 2001 transaction demonstrated that after a prearranged drug buy police recovered 67 hits of crack cocaine from Wise's car. The February 2004 arrest was made also as a result of a prearranged drug buy, and police recovered approximately 40 grams of cocaine from Wise's person. That case was still pending at the time of the trial.

In this case, the trial court's finding that Wise's prior drug offenses were sufficiently similar was authorized. *Howard v. State*, 262 Ga. App. 198, 200 (3) (585 SE2d 164) (2003). Moreover, as Wise denied participating in the drug transaction at issue, the similar transactions were relevant and admissible to prove his bent of mind and course of conduct. Id.

Likewise, although the 1995 transactions were somewhat remote in time when the case was tried, we cannot say that they were so far removed from the 2002 incident that the trial court's decision to admit evidence of the earlier transactions was an abuse of discretion. See *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252)

12

(1998) (even 17-year lapse between similar transaction and crime at issue not so great that trial court's decision to allow similar transaction evidence was clearly erroneous); *Lee v. State*, 250 Ga. App. 110, 112 (2) (550 SE2d 696) (2001) (extensive gap between similar transaction and crime at issue goes to weight and credibility and not admissibility).

5. Wise contends that the trial court erred in allowing the State's witness to testify about cocaine she had tested in Wise's 2004 similar transaction when there was not a proper chain of custody established.

During the trial, a GBI lab chemist testified about the cocaine she had tested in Wise's pending 2004 similar transaction. The cocaine was unrelated to the charges for which Wise was on trial for, other than showing that the 2004 transaction also involved cocaine. After Wise's objection, the State withdrew its attempt to admit the cocaine, and introduced the reports instead. The trial court allowed the chemist to testify about her handling of the cocaine, "to say, this is what I did," and further ruled that Wise could cross-examine her about the chain of custody of the cocaine, which would go to the weight to be given the evidence rather than its admissibility.

> To show a chain of custody adequate to preserve the identity of
> fungible evidence, the [S]tate must prove with reasonable certainty that

the evidence is the same as that seized and that there has been no tampering or substitution. The [S]tate is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.

(Citation omitted.) *Postell v. State*, 279 Ga. App. 275, 278 (2) (630 SE2d 867) (2006); *Armstrong v. State*, 274 Ga. 771, 772 (560 SE2d 643) (2002) ("When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence.")

Here, however, the cocaine was not admitted into evidence; instead, the trial allowed the chemist to testify that she had indeed tested a substance related to a pending similar transaction that she determined to be cocaine. The State presented this evidence merely to establish the basis for the charge in the pending similar transaction, rather than Wise's guilt or innocence in the present case. In this circumstance, there was no requirement that the chain of custody account "for the safekeeping and transportation of the evidence from seizure to trial." *Phillips v. Williams*, 276 Ga. 691, 692 (583 SE2d 4) (2003). Moreover, "in a drug possession case, the concept of corpus delicti requires that there be proof by the state that the accused possessed the illegal drug; there is, however, no invariable requirement that

14

the drug itself be produced." *Chaney v. State*, 265 Ga. 415, 421 (349 SE2d 717) (1986).

Thus, as the testimony was offered as proof of the possession charge in the 2004 case, rather than proof of the cocaine that Wise possessed in the present case, the trial court did not err in allowing the chemist to testify about the substance she tested.

6. Likewise we find no merit to Wise's contention that the trial court erred in failing to enforce Wise's subpoena of the personnel file of the arresting officer.

"When the defense seeks to discover the personnel files of an investigating law enforcement officer, some showing of need must be made. The need which must be shown is also subject to the general rules of evidence, including a showing of relevancy." (Citations omitted.) *Lopez v. State*, 267 Ga. App. 178, 182 (5) (598 SE2d 898) (2004). Contrary to Wise's contention, the trial court directed that if Wise provided some evidence of the officer's wrongdoing, he could "recall [the officer]. . . If you've got some legitimate evidence that there is an internal affairs record against him." The trial court ruled that because Wise had not substantiated his allegation as to any complaints against the officer, the officer's file was irrelevant. It

further directed that if Wise contended that he made a complaint against the officer, then he could "certainly take the stand and testify to that."

> [Wise] does not point to any specific report contained in the personnel files which casts doubt upon any officer's credibility. The officer's file can have no relevance to the guilt or innocence of the defendant in this case and the trial judge was absolutely correct to deny defendant access to it, the more so because it was to be a fishing expedition and defendant did not know what he hoped to find therein, except his own complaint against the officer.

(Citation and punctuation omitted.) *Taylor v. State*, 182 Ga. App. 494, 496 (1) (356 SE2d 216) (1987). "His general assertion that something in the file[s] might be exculpatory is insufficient to show error. [Cit.]" *Pollard v. State*, 260 Ga. App. 540, 545 (4) (580 SE2d 337) (2003).

7. Wise last contends that the trial court erred in denying his motion to enforce a plea agreement. Again, we find no error.

The record demonstrated that Wise filed a motion to enforce the State's plea offer of ten years on the instant case and another pending case, to serve three with the balance probated. The plea was later withdrawn. Wise maintains he had intended to take the plea offer, but that he was confused about some of the terms and that it was withdrawn while he was getting clarification. The trial court found that based on its

16

recollection, the State was going to resolve both of Wise's cases together and offered "10 serve 3, both cases, that's the deal; otherwise, I'm withdrawing the deal. [Wise] . . . didn't take the deal. The State then says, Your honor, the offer is withdrawn." The court declined to force the State to offer the plea again, and advised Wise that he was free to enter into a "blind plea" if he so desired, which he did not.

"Because [Wise] did not accept the plea, there is no plea agreement to enforce." *Carson v. State*, 264 Ga. App. 763, 764 (592 SE2d 161) (2003). Thus, the trial court did not err in denying Wise's motion.

*Judgment affirmed. McFadden, J., concurs. McMillian, J., concurs in Divisions 1, 2, 3, 5, 6, and 7, and in the judgment.*