**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 13, 2014**

# In the Court of Appeals of Georgia

A14A0677. ADAMS v. THE STATE.

MILLER, Judge.

Following a jury trial, Christopher Adams was convicted of one count of armed robbery (OCGA § 16-8-41 (a)). Adams appeals from the denial of his motion for a new trial, contending that: (1) the trial court erred by not allowing defense counsel to cross examine one of the victim's about a previous bad act, which denied the defendant the opportunity to impeach the witness; (2) the trial court imposed a vindictive sentence after exercising his right to jury trial; (3) his trial counsel was ineffective; and (4) the verdict is contrary to law and the principles of justice and equity. For the reasons that follow, we affirm.

On appeal, we construe the evidence favorably to the jury's verdict. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find [Adams] guilty beyond a reasonable doubt. As long as there is some

competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation and punctuation omitted.) *Williams v. State*, 312 Ga. App. 22 (717 SE2d 532) (2011).

So viewed, the evidence shows that on or about November 4 and November 5, 2009, Adams bought a vinyl Halloween mask and a blue aluminum baseball bat at a Wal-Mart. Thereafter, on the morning of November 5, Adams parked the vehicle he was driving at an unmanned electrical substation off of Hicks Road in Cobb County, Georgia. From there, Adams put on the Halloween mask and walked with the bat to the CVS store at the corner of the East/West Connector and Hicks Road. Adams walked inside the store, put the bat on his shoulder, and ordered the CVS employees to give him all of the money out of the register. Adams then shook the bat and yelled at the employees to hurry. One of the employees also saw something protruding out of Adams's sweat shirt that he believed to be a gun or other weapon. The employee emptied the register and put approximately $135 in a white plastic CVS bag that he then gave to Adams.

Adams then left the store, and the employee called 911. The employee told dispatch that Adams was running through a field behind the CVS building. A

2

responding police officer received a detailed description of Adams, which he relayed to other officers. Around this time, Officer Matthew Owen was driving on Hicks Road toward the CVS when he passed a vehicle parked at the electrical substation. Officer Owen thought the vehicle was suspicious and he made a U-turn to investigate. At that time, Officer Owen saw Adams walking out of the field from the direction of the CVS. Officer Owen observed that Adams matched the description of the CVS robber and that he was carrying a white bag, a vinyl mask, and a blue baseball bat. Officer Owen exited his patrol car, drew his weapon, and told Adams to drop his weapons and lie on the ground. Adams dropped everything he was carrying and laid on the ground. Officer Owen then radioed other officers that he had a possible suspect.

After other officers arrived, Adams was handcuffed, and during a pat-down search, police officers recovered a stun-gun in the pocket of Adams's sweatshirt. Officers also found the following items on or near Adams: a Halloween mask, a blue baseball bat, receipts for the mask and bat, and a white plastic CVS bag containing approximately $136. After being advised of his rights, Adams admitted that he robbed the CVS.

At trial, Adams admitted that he committed the robbery, but submitted that he was not armed. In particular, Adams testified that he never swung or moved the bat off of his shoulder, and that the stun gun was not in his pocket while he was inside the store.

1. Adams contends that the trial court erred in preventing him from impeaching the CVS store employee who emptied the cash register and gave Adams the money. Specifically, Adams wished to impeach the employee with evidence that the employee's employment with CVS ended because he committed theft. We disagree.

At the trial, the former employee stated that he began working at CVS because his work in real estate had declined. During cross-examination, the former employee testified that he left CVS because he wanted to return to real estate. When asked by defense counsel whether the former employee left voluntarily, the former employee stated that it was a mutual decision. Defense counsel then asked the former employee whether he had been accused of any wrongdoing. The former employee asked the trial court whether he was required to answer, and the State argued that the reason for the employee's departure was not relevant. The trial court then excused the jury, and asked the former employee to answer defense counsel's question. The former employee stated that he had became disgruntled with his pay and, as a form of protest,

4

he would eat snacks without paying for them and that he would do this in front of the store video camera. The former employee told management of his actions and the reasons for his actions, and they mutually decided that it was best if the employee resigned. The former employee stated that CVS "technically could have gotten [him] for theft or something," although no charges were ever filed against him. Defense counsel argued that he should be allowed to introduce evidence of the former employee's theft because he could use the prior bad act to impeach the witness. The judge permitted defense counsel to ask the employee if there were other reasons for leaving CVS, but the trial court did not allow defense counsel to bring up any prior bad acts.

> [T]rial courts retain wide latitude to impose reasonable limits on cross-examination . . . . The permissible scope of cross-examination is committed to the sound discretion of the trial court, and we review a limitation of the scope of cross-examination only for abuse of discretion.

(Citations and punctuation omitted.) *Nicely v. State*, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012).

Generally, a victim, such as the employee at issue, may not be impeached with instances of specific misconduct or prior bad acts. *Allen v. State*, 275 Ga. 64, 68 (3) (561 SE2d 397) (2002); see also *Wise v. State*, 321 Ga. App. 39, 44 (3) (740 SE2d

850) (2013). Adams argues that the trial court was required to allow him to cross-examine the employee about his admitted theft under former OCGA § 24-9-84.1 (a) (3).[1] That section provided, however, that "[e]vidence that any witness . . . has been *convicted of a crime* shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense." Adams did not submit proof that the employee was convicted of, much less charged with, a crime for failing to pay for the snacks. See *Woods v. State,* 269 Ga. 60, 63 (4) (495 SE2d 282) (1998) (a witness is successfully impeached with a prior conviction by tendering into evidence certified copies of the witness's prior convictions). Consequently, the testimony regarding such specific bad acts was not admissible for impeachment purposes. See *Wetta v. State*, 217 Ga. App. 128, 130 (3) (456 SE2d 696) (1995) (proffered testimony not admissible because it related solely to a specific bad act). Accordingly, the trial court did not abuse its discretion in limiting Adams from cross-examining the former employee about prior bad acts.

---

[1] Adams cites to former OCGA § 24-9-84 (a) (3), but it is clear from his argument that he is referring instead to former OCGA § 24-9-84.1 (a) (3). Additionally, Adams's reliance upon the new Evidence Code is unavailing. This case was tried in 2011. As a result, Georgia's new Evidence Code, effective January 1, 2013, does not apply to this case. See *Slaughter v. State*, 292 Ga. 573, 576 (2), n. 3 (740 SE2d 119) (2013).

2. Adams next contends that the trial court acted vindictively by giving him a greater sentence after the jury found him guilty than he would have received if he had accepted the State's plea offer. Adams's contention has no merit.

There is no evidence that the trial court acted in a vindictive manner in sentencing Adams. Contrary to Adams's suggestion otherwise,[2] there is no presumption of vindictiveness when a trial court imposes a greater penalty after trial than it would have after a guilty plea. *Townes*, supra, 298 Ga. App. at 189. This Court has long recognized that a trial court does not engage in unconstitutional "vindictiveness" by imposing a harsher sentence following a jury trial than may have been imposed if the defendant had accepted a plea bargain. *Allen v. State,* 193 Ga. App. 670, 671-672 (388 SE2d 889) (1989). In imposing a harsher sentence following trial, the trial court is "merely following through on the inevitable and permissible threat which is implicit in any plea bargain situation–that rejection of the plea bargain may diminish or destroy the very rationale for the imposition of a lenient sentence." (Citation and punctuation omitted.) Id. at 671.

---

[2] To the extent Adams relies upon *North Carolina v. Pearce*, 395 U.S. 711 (89 SCt 2072, 23 LEd2d 656) (1969) for the proposition that a presumption of vindictiveness exists, that case applies only to *resentencing* after a conviction is set aside. See *Townes v. State*, 298 Ga. App. 185, 189 (679 SE2d 772) (2009).

3. Adams next contends that his trial counsel was ineffective for not insisting on a ruling by the trial court on his objection to the verdict form regarding the insertion of the word "or" between the first option to find him guilty of armed robbery and the second option to find him guilty of robbery by intimidation. Adams also asserts that trial counsel was ineffective for failing to renew his objection after the jury charge. We disagree.

"To establish an ineffective assistance of counsel claim, the defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense. There is a strong presumption that counsel's conduct falls within the range of sound trial strategy and reasonable professional judgment." (Citations omitted.) *Bright v. State*, 292 Ga. 273, 274 (2) (736 SE2d 380) (2013). In reviewing a trial court's ruling on an ineffective assistance claim, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations and punctuation omitted.) *Holloman v. State*, 293 Ga. 151, 154 (4) (744 SE2d 59) (2013). "[D]ecisions of when and how to raise objections are generally matters of trial strategy[.]" (Footnote omitted.) *Holmes v. State*, 271 Ga. App. 122, 124 (3) (608 SE2d 726) (2004).

8

Adams did not call his trial counsel to testify at the motion for new trial hearing. Without trial counsel's testimony, there is no evidence in the record as to why counsel did not insist on a ruling on his objection or renew his objection after the jury charge. See *Sanders v. State*, 283 Ga. 372, 374 (2) (a) (659 SE2d 376) (2008) Therefore, Adams has failed to overcome the strong presumption that counsel's actions fell within the range of reasonable trial strategy. See *Holmes*, supra, 271 Ga. App. at 124 (3).

Even if trial counsel was deficient in the manner alleged, Adams has failed to establish prejudice. In its charge to the jury, the trial court read the single count of armed robbery and provided the elements for armed robbery and the lesser included offense of robbery by intimidation. The trial court further charged the jury that, based on a review of the evidence, it could either find Adams not guilty of armed robbery, guilty of armed robbery, *or* guilty of robbery by intimidation. Although the jury asked for a recharge on armed robbery and robbery by intimidation, there is no evidence that the jury was confused as to the possible verdicts it could reach. The verdict form was not improper or misleading, and Adams has not shown that any ruling on an objection to the verdict form would have been meritorious or would have led to a different result. See *Moore v. State*, 319 Ga. App. 766, 775 (8) (c) (738 SE2d 348)

9

(2013) (where trial court properly instructed the jury on the separate counts of the verdict form, the defendant failed to establish a reasonable likelihood of a different outcome had trial counsel objected to verdict form listing the charge against the defendant in between the charges against a co-defendant); *Wilcox v. State*, 297 Ga. App. 201, 205, 207 (3) (677 SE2d 142) (2009) (no prejudice from trial counsel's failure to object to verdict form for failing to list theft by taking as a lesser included offense of both hijacking a motor vehicle and armed robbery because qualified jurors were presumed to follow trial court's instructions that it was a lesser included offense of both crimes). Accordingly, Adams's ineffective assistance claim fails.

4. In his last enumeration, Adams contends that the verdict was contrary to the law and the principles of justice for reasons stated in his prior enumerations. In light of our resolution in Divisions 1 through 3, Adams contention on this ground is without merit. Since he makes no other argument that the verdict was contrary to law or not supported by the evidence, we affirm his conviction.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*