### A11A1566. GANT v. THE STATE.

(721 SE2d 913)

ELLINGTON, Judge.

A Columbia County jury found Willie Gant guilty beyond a reasonable doubt of child molestation, OCGA § 16-6-4 (a) (1); enticing a child for indecent purposes, OCGA § 16-6-5 (a); and incest, OCGA § 16-6-22 (a) (1). He appeals from the denial of his motion for new trial, contending that he received ineffective assistance of counsel and that the trial court erred in admitting certain evidence. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following facts. Gant married the victim's mother in 2002, when the victim was nine years old. According to the victim, on July 31, 2006, she was alone at the family's Columbia County home while Gant and her mother were at work, and she called Gant and asked him to pick up some fast food and bring it to her during his lunch break. After Gant arrived, they ate and played video games, and then Gant went into his bedroom and told her to join him. She complied, and Gant had sexual intercourse with her on the bed while telling her that he was falling in love with her.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

According to the victim, Gant put Neosporin, a topical anesthetic gel, on his penis to act as a lubricant, and he ejaculated into a towel. Gant then took the victim into the bathroom and had sex with her there. Gant warned the victim not to tell anyone because he would go to jail. Then, after doing some laundry and taking a nap, Gant returned to work.

The victim called her mother and told her what had happened. Her mother said that she was coming home, and she told the victim not to call Gant. While her mother was en route, however, the victim called Gant during his 2:00 p.m. break and told him that she had reported the incident to her mother. Gant said that he was going to go to jail and told the victim to tell her mother that it was not true. Gant then drove home and, after briefly speaking with his wife, he packed his clothing and moved out.

The victim's mother took her to the emergency room, where a physician conducted a sexual assault examination and found that the victim's hymen was torn in two places, leading her to conclude that the victim had previously had sexual intercourse. A forensic biologist employed by the Georgia Bureau of Investigation (GBI) performed DNA tests on vaginal cervical swabs that had been obtained from the victim, and male DNA was found; however, attempts to obtain a DNA profile that would have identified the source of the male DNA were unsuccessful.

A videotaped forensic interview with the victim was also conducted; the tape was played for the jury at trial. Police officers then obtained the mother's consent to search the family's home; they seized Gant's bedspread and a tube of Neosporin from his night stand, a towel from the bathroom, and the clothes the victim was wearing at the time she was assaulted.

At trial, the victim testified that, before the 2006 incident at issue, Gant had "raped" her almost every day since he married her mother in 2002. According to the victim, Gant told her that he "wanted to show [her] what boys would do to [her] in the future." The victim first told her mother about the sexual abuse by writing her a note about a month and a half before the 2006 incident; the note was introduced into evidence as State's Exhibit 1. According to the victim and her mother, they met with a church elder, and the victim told him that Gant had been molesting her. The next day, however, when the family met as a group with the elder, the victim recanted her allegations. The victim also gave Gant and her mother a heart-shaped note expressing her wish that they could be a family again. In addition to this evidence, the State showed that, before the victim's mother knew about the victim's allegations, she found a pair of the victim's panties under Gant's bed, but, when asked, both Gant and the victim had denied any knowledge of how the panties had

gotten there.

Gant testified on his own behalf at trial, denied the victim's allegations, and asserted that he could not have committed the crimes described by the victim during his 30-minute lunch break, which his employer strictly enforced. The jury rejected Gant's defense, however, and found him guilty of the indicted crimes.

1. On appeal, Gant contends that his trial counsel provided ineffective assistance in several respects.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

(a) Gant contends that his counsel was ineffective for failing to present the testimony of the church elder and a second man who was present during the family meeting and who heard the victim deny that Gant had molested her. However, Gant did not call the witnesses to testify during the motion for new trial hearing or otherwise introduce a legally recognized substitute for such testimony in order to show that the witnesses' trial testimony would have been relevant, admissible and favorable to his defense. See *Watkins v. State*, 289 Ga. 359, 362 (3) (a) (711 SE2d 655) (2011) ("[T]o demonstrate prejudice from trial counsel's alleged failure to elicit favorable testimony at trial, the defendant may not rely on hearsay or speculation[,] but must either call the witness or introduce a legally recognized substitute for the uncalled witness's testimony.") (citations and punctuation omitted); *Strong v. State*, 275 Ga. 465, 466 (2) (a) (569 SE2d 523) (2002) (Because the defendant did not produce the witness or the witness' affidavit at the hearing on his motion for new trial, he failed to present any probative evidence that the

witness would have testified for the defense at trial and that his testimony would have been exculpatory.). Under such circumstances, we need not evaluate whether counsel's performance was deficient for failing to call the witnesses at trial, because Gant has failed to establish the second prong of the *Strickland* test, which is that counsel's performance prejudiced his defense. *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995); *McRae v. State*, 289 Ga. App. 418, 420 (2) (657 SE2d 323) (2008).

(b) Gant argues that his counsel was ineffective for failing to obtain, and to offer as evidence at trial, the heart-shaped note that was written by the victim and given to her mother and Gant after she recanted her allegations against him. There is nothing in the record, however, to show that either Gant or the victim's mother preserved the note or provided it to trial counsel before or during trial. In fact, at the motion for new trial hearing, Gant admitted that he had not seen the note since the night he and his wife had received it and that he did not know if the note was even available at the time of trial; Gant also failed to proffer the note during the new trial hearing. Consequently, Gant has failed to show that counsel could have obtained the note and presented it to the jury on his behalf at trial, and, thus, has failed to demonstrate that counsel was deficient in failing to offer the note as evidence at trial or that he was prejudiced thereby. See generally *Wilson v. State*, 291 Ga. App. 69, 74 (4) (a) (661 SE2d 221) (2008) (Absent a proffer of the evidence that the defendant alleged had been improperly excluded by the trial court, the defendant failed to demonstrate that his counsel's failure to except to the court's ruling prejudiced the outcome of his trial.).

(c) Gant contends that his trial counsel was ineffective for failing to present evidence, such as his time card from work or the testimony of his supervisor, that would have shown the jury that, on the day of the alleged offenses, he had a strictly enforced 30-minute lunch break. According to Gant, this evidence was necessary to establish his primary defense, i.e., that, in July 2006, his employer prohibited him from taking more than a 30-minute break for lunch and that, as a result, it was physically impossible for him to have committed the acts alleged by the victim during such a short break.

The record shows, however, that Gant testified at trial and repeatedly emphasized this defense, specifically telling the jury that he clocked back in at work 27 minutes after leaving for his lunch break. Further, as shown above, it is undisputed that, after the victim told her mother about the incident, the victim called Gant at work at approximately 2:00 p.m. and told him about her allegations. Thus, Gant was aware of the victim's allegations within two hours after his lunch break, a fact he admitted at the motion for new trial hearing. Even with this knowledge, however, and even though he

was free on bond before his trial, he never attempted to obtain his time card or other employment records to show that he had clocked out and back in within 30 minutes during his lunch break on the day at issue. In addition, Gant failed to proffer the time card, any employment records, or the testimony of his supervisor at the motion for new trial hearing.[2] Finally, his trial counsel testified that she did not remember Gant telling her before trial that his time card or employment records would prove he only had a 30-minute lunch break on the day at issue.

As with the evidence at issue in the previous subsections, we conclude that Gant has failed to show that his trial counsel was deficient in failing to obtain and to present the evidence at trial and that he was prejudiced thereby. *Watkins v. State*, 289 Ga. at 362 (3) (a); *Strong v. State*, 275 Ga. at 466 (2) (a); *Goodwin v. Cruz-Padillo*, 265 Ga. at 615; *Wilson v. State*, 291 Ga. App. at 74 (4) (a); *McRae v. State*, 289 Ga. App. at 420 (2).

(d) Gant argues that his counsel was ineffective for failing to review the physical evidence against him before trial and that, as a result, counsel was surprised during trial to learn that some of the evidence seized from Gant's home (specifically, the bedspread, the towel, and the victim's clothes) had been lost before it had been tested for DNA evidence. The State showed that the items had been delivered to the GBI crime lab to be tested for bodily fluids, hairs, and other evidence, but they were subsequently misplaced and never tested. Other items that were delivered at the same time, however, including the sexual assault kit obtained during the physical examination of the victim, were processed and tested by the crime lab.

At the new trial hearing, trial counsel testified that she was not sure if she knew before trial that the bedspread, towel and clothing had been lost, but she believed that the unavailability of results from testing the evidence had helped Gant's defense "tremendously." In addition, during the hearing, the GBI crime forensic biologist who had testified at trial about the DNA results from the victim's sexual assault kit admitted that, at the time of Gant's trial, she was not aware that other evidence from the alleged crimes had been delivered to and lost by the crime lab. She explained that evidence that is submitted to the crime lab is first handled by "evidence entry technicians," who label and deliver it to the appropriate department for testing. There is no evidence in the record to show that the forensic biologist who testified had ever handled the missing evi-

---

[2] Notably, at the end of the hearing, Gant's appellate counsel told the trial court that he had contacted Gant's employer and its staffing service in an attempt to obtain Gant's time card, but he had been unsuccessful. Although the court then gave counsel another week to locate it, counsel was unable to do so.

dence, and Gant has failed to proffer the testimony of an "evidence entry technician" or anyone else employed by the crime lab who had any knowledge of what happened to the evidence.

Given defense counsel's testimony that she believed the unavailability of the items for DNA testing helped — not hampered — Gant's defense, and because Gant has failed to demonstrate that there is any reasonable probability that the outcome of his trial would have been different if counsel had known that the items were missing before trial, he has failed to meet his burden of showing prejudice under the second prong of the *Strickland* test. *Robinson v. State*, 277 Ga. at 75-76.

(e) Gant contends that his counsel was ineffective for failing to object to evidence of prior "similar transactions" involving him and the victim. As explained in Division 2, infra, the evidence was admissible to show prior difficulties between the victim and Gant. Thus, trial counsel was not ineffective for failing to object to the evidence. *Stillwell v. State*, 294 Ga. App. 805, 809 (2) (e) (670 SE2d 452) (2008) (failure to object to admissible prior difficulties evidence does not constitute ineffective assistance); see *McCoy v. State*, 285 Ga. App. 246, 249 (4) (b) (645 SE2d 728) (2007) ("failure to make a meritless argument does not constitute ineffective assistance of counsel") (footnote omitted).

(f) Gant also contends that his counsel was ineffective for failing to object when the trial court allowed the jury to review State's Exhibits 1 and 2 during deliberations, in violation of the continuing witness rule.[3] However, Gant has failed to show, by citing to the record, that the exhibits actually went out with the jury for their review during deliberations. It is axiomatic that the party alleging error on appeal carries the burden of showing it affirmatively by the record, and when that burden is not met, the trial court's judgment is assumed to be correct and will be affirmed. *Hung v. State*, 284 Ga. 796, 799 (5) (671 SE2d 811) (2009); *Theophile v. State*, 295 Ga. App. 517, 521 (2) (672 SE2d 479) (2009). Consequently, this alleged error provides no basis for relief.[4]

---

[3] "The continuing witness rule prohibits writings from going out with the jury when the evidentiary value of such writings depends on the credibility of the maker." (Punctuation and footnote omitted.) *Bryant v. State*, 270 Ga. 266, 270-271 (3) (507 SE2d 451) (1998).

> In Georgia[,] the "continuing witness" objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.

(Punctuation and footnote omitted.) *Hopkins v. State*, 283 Ga. App. 654, 656-657 (2) (642 SE2d 356) (2007).

[4] Notably, at the new trial hearing, trial counsel testified that she and Gant had discussed State's Exhibit 2, which is a letter from the victim to the district attorney telling him that she

2. Gant contends that the trial court erred in admitting evidence of "similar transactions" and prior bad conduct evidence without conducting a hearing. The evidence to which he refers, however, is the victim's testimony regarding numerous acts of sexual molestation committed against her by Gant prior to the July 2006 incident at issue in this case. Thus, the acts were not similar transactions, but were, instead, prior difficulties between the parties.

> Proof of prior difficulties between the defendant and victim — including prior acts of molestation — is admissible without notice or a hearing. This evidence is admissible to show the defendant's motive, intent, and bent of mind in committing the act against the victim which resulted in the charges for which he was being prosecuted.

(Punctuation and footnotes omitted.) *Rayner v. State*, 307 Ga. App. 861, 864 (1) (706 SE2d 205) (2011). See *Stillwell v. State*, 294 Ga. App. at 809 (2) (e) (accord). We conclude that the trial court did not abuse its discretion in admitting the evidence of prior difficulties in this case. See *Carter v. State*, 296 Ga. App. 598, 601, n. 7 (675 SE2d 320) (2009) (This Court reviews a trial court's ruling on the admission of evidence under an abuse of discretion standard.).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED DECEMBER 15, 2011.

*Jacque D. Hawk*, for appellant.
*R. Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.

---

loves and misses Gant, that he is "the only father" she has had, and that she does not want him to go to jail. Counsel testified that she hoped the letter "would play on [the jury's] sympathy," so they would find Gant not guilty.