**FIFTH DIVISION
PHIPPS, P. J.,
DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 25, 2016**

# In the Court of Appeals of Georgia

A16A0652. EVERHART v. THE STATE.                              PE-023C

PETERSON, Judge.

Jonanthony Everhart, convicted of two counts of cruelty to children in the first degree, and one count of cruelty to children in the second degree, appeals from the denial of his motion for a new trial. Everhart argues that (1) the trial court erred in allowing deposition testimony to be read at trial; (2) the trial court erred in failing to conduct a pretrial hearing on other acts evidence; (3) his trial counsel rendered ineffective assistance of counsel in several respects; and (4) Count 1 of the indictment did not allege the crime of cruelty to children in the first degree. We reverse Everhart's conviction on Count 1 for cruelty to children in the first degree because Everhart's trial counsel provided ineffective assistance by failing to demur to the fatally defective indictment. We affirm Everhart's remaining convictions because (1)

the other aspects of trial counsel's performance of which Everhart complains do not constitute ineffective assistance that prejudiced his defense, (2) Everhart's counsel agreed to the deposition without Everhart's presence and Everhart acquiesced in that waiver of his presence, and (3) admitting evidence of prior difficulties between Everhart and the victim's brother neither required a hearing nor harmed Everhart.

"On appeal, the evidence must be viewed in the light most favorable to support the verdict, and the appellant no longer enjoys a presumption of innocence." *Culver v. State*, 230 Ga. App. 224, 224 (496 SE2d 292) (1998) (citation omitted). So viewed, the evidence shows that Everhart was living with the victim, who was a three-month-old infant at the time, and the victim's two-year-old brother and mother, although he was not the biological father of the children. One evening, Everhart demanded money from the victim's mother to buy marijuana and cigarettes. When she refused, Everhart jerked the young victim out of the car seat and started beating him repeatedly in the ribs with a broom handle. Everhart also shook the victim. Despite obvious resulting injuries, including bloody urine in the victim's diaper, Everhart and the victim's mother did not bring the victim to the hospital until several days later, claiming another adult, Ms. Smith, had dropped the victim. The victim was noted as having serious life-threatening injuries, was intubated, and was transferred via emergency

helicopter to a children's hospital. Medical assessment of the victim revealed a skull fracture, brain bleeding and damage, internal bleeding and organ damage, multiple rib fractures, retinal hemorrhages, and resulting seizures, all of which were likely to result in significant life-long impairment. The physicians who testified at trial agreed that the injuries were not compatible with the victim having simply been dropped or falling, but rather were the result of physical abuse. The victim's brother also had bruising. The victim and his brother were taken into protective custody, and their mother and Everhart were subsequently arrested and charged with various crimes pertaining to both children.[1]

At Everhart's trial, testimony regarding the extent and cause of the victim's injuries was presented through the deposition of Dr. Greenbaum, a forensic pathologist. The victim's mother and a police officer also provided testimony

---

[1] Count 1 charged Everhart with first degree cruelty to children for the willful deprivation of necessary sustenance by failing to seek medical care for the victim; Count 2 charged Everhart with second degree cruelty to children for causing cruel and excessive physical and mental pain to the victim by failing to seek medical care for him; Count 3 charged Everhart with first degree cruelty to children for causing cruel and excessive physical and mental pain to the victim by inflicting multiple physical injuries; Count 4 charged Everhart with aggravated battery for causing brain and internal injury to the victim; Count 5 charged Everhart with first degree cruelty to children for bruising the victim's brother; and Count 6 charged Everhart with family violence battery for causing visible bodily harm to the victim's brother.

regarding a previous episode in which Everhart hit the victim's brother repeatedly over a twenty minute period. Ms. Smith, who Everhart had originally claimed injured the victim, also testified that she had to provide some care to the victim while the victim's mother and Everhart were outside smoking marijuana. Additionally, a witness from the Division of Family and Children's Services ("DFCS") testified regarding her interview of Everhart, and Everhart's videotaped interview by a police investigator was played at trial. Everhart was found guilty of the charges pertaining to the victim, but not those pertaining to the victim's brother. Everhart filed an amended motion for a new trial, which the trial court denied, prompting this appeal.

1. Everhart argues that the trial court erred in allowing the testimony from Dr. Greenbaum's deposition to be introduced at trial because the deposition occurred outside of his presence and without sufficient notice to him and because no notice of intent to depose Dr. Greenbaum was provided to or approved by the trial court. We disagree.

Although "the taking of testimony is a critical part of the trial at which the defendant has the right to be present[,]" a defendant may waive that right either personally or through his counsel. *Holsey v. State*, 271 Ga. 856, 861 (5) (524 SE2d 473) (1999); *see also Brooks v. State*, 271 Ga. 456, 457 (2) (519 SE2d 907) (1999).

4

"For there to be a waiver by defendant's counsel, the waiver must be made in the defendant's presence or with his express permission, or else the waiver must be subsequently acquiesced in by the defendant." *Brooks*, 271 Ga. at 457 (2) (footnote omitted).

Everhart was not present during the deposition, but Everhart's counsel indicated that he was "waiving the appearance of Mr. Everhart," although he had not yet discussed the issue with Everhart. . When Dr. Greenbaum's deposition was later introduced at trial, neither Everhart nor his attorney objected. This silence constituted Everhart's acquiescence in the waiver of his presence at the deposition. *See Holsey*, 271 Ga. at 861 (5) (when defendant's "counsel made no objection and [defendant] remained silent as well," court concluded that defendant "acquiesced in the proceedings that occurred . . . in his absence"); *Zamora v. State*, 291 Ga. 512, 519-20 (7) (c) (731 SE2d 658) (2012) (appellant's failure to object upon discovering the details of a bench conference conducted in his absence amounted to acquiescence).

Everhart argues *Holsey* does not apply because in that case the court affirmatively addressed the issue with the defendant, and thus the defendant's silence was more meaningful than it is here. This is a misreading of *Holsey*. In *Holsey*, the trial court simply informed the parties that certain juror questions during a site visit

5

that the defendant did not attend had been answered; the court did not ask the defendant or his counsel anything about the defendant's absence. *Id.* at 861 (5). Neither the defendant nor his counsel objected, and therefore the defendant was found to have acquiesced in the proceedings. *Id.* In any event, the rule in *Holsey* has been applied in a number of other cases in which a defendant's silence has been taken as acquiescence even in the absence of a specific statement to the defendant by the court. *See, e.g.*, *Scudder v. State*, No. S15A1312, 2016 WL 462592, at *2 (2) (— S.E.2d —) (Feb. 8, 2016); *Zamora*, 291 Ga. at 519-20 (7) (c); *Jackson v. State*, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004).

We also note that this case is necessarily different from the other case Everhart relies upon, *Cesari v. State*, 334 Ga. App. 605 (780 SE2d 56) (2015). In that case, the defendant was denied reentry into the courtroom during the course of his trial, an action in which he did not acquiesce. *Cesari*, 334 Ga. at 610 (1). No equivalent event occurred here.

Everhart also argues that the State failed to follow the requirements for using a deposition at trial set forth in OCGA § 24-10-130, which includes a provision for notice. But regardless of any technical defect in the State's failure to adhere to OCGA § 24-10-130's requirements, Everhart's counsel had actual notice of the deposition,

6

was present, and cross-examined the witness. *See, e.g.*, *Burrell v. State*, 258 Ga. 841, 844 (6) (376 SE2d 184) (1989) (technical violation of statute's notice provision harmless where, among other things, defendant had an opportunity to cross-examine).

Because Everhart ultimately acquiesced in his counsel's waiver of his presence at the deposition, there was no violation of Everhart's constitutional rights, and any violation of the statute's notice provision was harmless.

2. Everhart also argues that the trial court erred by failing to conduct a pretrial hearing to determine the admissibility of other criminal wrongdoing and prior bad acts and by failing to make explicit rulings regarding relevance and prejudice. We disagree.

Everhart objects to the admission of evidence pertaining to a prior police response to a 911 call. Someone had called police to report hearing a child being beaten for approximately twenty minutes. The responding officer testified that when he arrived at the residence, "I talked to all three of the children for a minute. All of them seemed fine. They were just running around playing like any normal children would be doing[.]" The responding officer further testified that he checked to see if they were okay, and that the children did not seem to be in any distress. The police officer did not take any further action because he did not observe anything that

7

warranted a report to DFCS, and was not even certain that Everhart was the same individual at the residence when he responded to the 911 call. The victim's mother testified that, on the day of the 911 call, Everhart had beaten the victim's brother with a belt because he did not like the way the child was looking at him.

(a) Everhart does not direct us to authority requiring a hearing before evidence of prior difficulties may be admitted. Prior to the new Evidence Code, former Uniform Superior Court Rule 31.3 required notice of an intent to introduce evidence of similar transactions and a hearing in order to decide whether the evidence was admissible. Unif. Sup. Ct. Rule 31.3(A)(B). The provision of notice and a hearing was an affirmative obligation of the State and the trial court, and a defendant's failure to object did not waive it. *See Riddle v. State*, 208 Ga. App. 8, 11 (1) (430 SE2d 153) (1993). But even when this Rule was still in effect, evidence of prior difficulties between a defendant and a victim — as opposed to prior transactions or occurrences — was admissible without notice or a hearing. *See Gant v. State*, 313 Ga. App. 329, 335 (2) (721 SE2d 913) (2011).

Under the new Evidence Code, however, OCGA § 24-4-404(b) — not Rule 31.3 — governs admission of prior difficulty evidence. *See Madison v. State*, 329 Ga. App. 856, 866 n.5 (3) (766 SE2d 206) (2014). OCGA § 24-4-404(b) incorporated

Rule 31.3's notice requirement (but not the hearing requirement) for evidence of other crimes or wrongs, but specifically excludes from this notice requirement "evidence of prior crimes, wrongs, or acts [that is] offered to prove . . . prior difficulties between the accused and the alleged victim." OCGA § 24-4-404(b). Because the statute excludes from the notice requirement evidence of prior difficulties between a defendant and a victim and, unlike Rule 31.3, says nothing about a mandatory hearing, we decline to read it as implicitly mandating a hearing before admission of evidence of prior difficulties. Accordingly, the trial court's failure to hold a hearing on this matter was not error.

(b) Everhart also argues the trial court erred by not making an explicit finding as to the balancing of the probative value and prejudicial effect of this evidence. But even if the trial court erred in admitting this testimony, "the error alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error." *Buice v State*, 239 Ga. App. 52, 57 (3) (520 SE2d 258) (1999) (citation and punctuation omitted). Everhart does not explain how he was harmed by this testimony; indeed, he points out that the police officer's testimony did not indicate that he acted wrongfully. Everhart was not found guilty of the counts pertaining to the victim's brother, indicating that the jury was able to consider the evidence on each

9

count in its own light. And the evidence of Everhart's guilt with respect to the victim is overwhelming based on the testimony of the victim's mother, the various medical providers who treated the victim, and the forensic pathologist, among other witnesses. Therefore, we fail to see how Everhart was harmed by equivocal testimony about an incident that the responding officer characterized as too minor to warrant a follow-up with DFCS.

3. Everhart argues that his trial counsel rendered ineffective assistance in several respects. We agree that counsel was ineffective for failing to demur to Count 1 of the indictment, and accordingly reverse Everhart's conviction on that count. We reject the rest of his arguments.

> To establish an ineffective assistance claim, an appellant must show not only that his counsel's performance was deficient but also that the deficiency so prejudiced him as to create a reasonable probability that but for counsel's errors, the outcome of the trial would have been different. Failure to satisfy both requirements is fatal to an ineffectiveness claim.

*Mitchell v. State*, 250 Ga. App. 292, 295-96 (2) (551 SE2d 404) (2001) (footnotes omitted). "In reviewing a trial court's determination regarding a claim for ineffective assistance of counsel, we uphold the court's factual findings unless they are clearly

10

erroneous, and review the court's legal conclusions de novo." *Raybon v. State*, 309

Ga. App. 365, 365 (710 SE2d 579) (2011) (footnote omitted).

(a) Everhart first argues that trial counsel was ineffective for failing to demur

to Count 1 of the indictment, which did not sufficiently allege a crime. We agree.

In Count 1, the indictment alleged that Everhart committed cruelty to children

in the first degree in violation of OCGA § 16-5-70 when he willfully deprived the

victim "of necessary sustenance to the extent said child's health and well-being were

jeopardized by failing to seek medical attention for said child after noticing injury and

illness to the child which continued to worsen[.]" Everhart argues that timely medical

care does not qualify as "necessary sustenance" under the statute. In this respect, he

is correct. *See Howell v. State*, 180 Ga. App. 749, 751-52 (3) (350 SE2d 473) (1986).

The State does not dispute this.

The State argues in response merely that this error in the indictment would

have been the subject of a special demurrer, in response to which the State could

simply have corrected the indictment, and therefore trial counsel's failure to file such

a motion caused no prejudice. The State is wrong.

> A general demurrer challenges the *validity* of an indictment by asserting
> that the *substance* of the indictment is legally insufficient to charge any

11

crime. In other words, a general demurrer is essentially a claim that the indictment is fatally defective and, therefore, void, because it fails to allege facts that constitute the charged crime or *any other* crime, including a lesser included offense of the charged crime.

*State v. Wilson*, 318 Ga. App. 88, 91-92 (1) (732 SE2d 330) (2012) (citations and footnote omitted) (emphasis in original). "In contrast to a general demurrer, a special demurrer merely objects to the *form* of an indictment and seeks more information or greater specificity about the offense charged." *Id.* at 92 (1) (citation omitted) (emphasis in original).

The State attempted to charge Everhart with cruelty to children in the first degree under the wrong sub-section of OCGA § 16-5-70. The State's allegation that Everhart failed to seek medical attention for the child "after noticing injury and illness to the child which continued to worsen" was not sufficient to charge any crime when the State alleged only that this deprivation constituted denial of "necessary sustenance." "'Necessary sustenance' has been defined by our Supreme Court as 'that which supports life; food; victuals; provisions' . . . Our statute, in the use of the word 'sustenance,' means that necessary food and drink which is sufficient to support life and maintain health." *Howell*, 180 Ga. App. at 751 (3) (citing *Caby v. State*, 249 Ga. 32, 33 (1) (237 SE2d 200) (1982)). "The denial of necessary and appropriate medical

12

care for a child under 18 years of age can constitute cruelty to a child when it causes the child 'cruel or excessive physical or mental pain', under OCGA § 16-5-70(b) but it does not constitute a denial of 'sustenance'." *Id.* at 751-52 (3). In order for the State to have charged Everhart sufficiently with cruelty to children in the first degree for the failure to seek timely medical care following the severe beating of the victim, the State needed to allege that the failure *maliciously* caused the child "*cruel or excessive physical or mental pain*." OCGA § 16-5-70(b) (emphasis added); *see also Howell*, 180 Ga. App. at 751-52 (3); *Williams v. State*, 285 Ga. App. 628, 629 (1) (647 SE2d 324) (2007). The State's indictment omitted these essential elements of the crime and therefore failed to charge Everhart with any crime at all. Therefore, Count 1 of the indictment was fatally defective and would have been dismissed if Everhart's counsel had filed a general demurrer.

Our requirement that an indictment state every essential element of the crime of which a defendant is accused may seem to some people like a fussy technicality. They would be wrong. "The Sixth Amendment to the United States Constitution states that criminal defendants shall 'be informed of the nature and cause of the accusation against them.' It is established in Georgia that satisfaction of this fundamental principle requires that a criminal indictment which does not recite

13

language from the Code must allege every essential element of the crime charged."
*Smith v. Hardrick*, 266 Ga. 54, 54 (1) (464 SE2d 198) (1995) (footnotes omitted).

This requirement serves several vital purposes. A properly crafted indictment enables a defendant to prepare a defense and establishes the scope of prosecution for purposes of our constitutional prohibition against double jeopardy. *See State v. Pittman*, 302 Ga. App. 531, 533 (690 SE2d 661) (2010). It also safeguards our requirement that a grand jury find probable cause before a prosecution may proceed; "[u]nless every essential element of a crime is stated in an indictment, it is impossible to ensure that the grand jury found probable cause to indict." *Smith*, 266 Ga. at 55 (1). For these reasons, "there can be no conviction for the commission of a crime an essential element of which is not charged in the indictment. If an accused individual can admit to all of the allegations in an indictment and still be not guilty of a crime, then the indictment generally is insufficient and must be declared void." *Id*. (punctuation and footnotes omitted).

Here, Everhart could have admitted all the allegations in Count 1 and still not be guilty of a crime. Had his counsel filed a general demurrer, Count 1 would have been dismissed. Accordingly, Everhart's trial counsel's failure to challenge this count constitutes deficient performance, contributed to Everhart's conviction on a void

14

count, and therefore harmed Everhart and prejudiced his case. *See Polk v. State*, 275 Ga. App. 467, 469 (1) (620 SE2d 857) (2005); *Youngblood v. State*, 253 Ga. App. 327, 329 (3) (558 SE2d 854) (2002). Consequently, we must reverse Everhart's conviction on this count.[2] *Polk*, 275 Ga. App. at 469 (1); *Youngblood*, 253 Ga. App. at 329 (3).

(b) Everhart next argues that his trial counsel was ineffective for (1) waiving his right to be present and confront Dr. Greenbaum at her deposition, and (2) failing to object to the introduction of that deposition testimony at trial. We disagree.

As we have already explained, where the defendant's counsel waives the defendant's presence at the deposition, the defendant may subsequently acquiesce in the waiver. *Brooks*, 271 Ga. at 457 (2). Everhart did so here. Thus, Everhart cannot now complain of his trial counsel's decision to agree to the deposition in the first instance and waive Everhart's presence at the deposition. *See London v. State*, 260 Ga. App. 780, 783 (3) (580 SE2d 686) (2003) (where defendant acquiesced in his trial counsel's consent to a particular arrangement in the jury room, that acquiescence waived his objection on appeal); *see also Brown v. State*, 310 Ga. App. 285, 290

---

[2] Because of our ruling here, we need not address Everhart's other enumerations of error related to Count 1.

15

(6)(e)(ii) (712 SE2d 521) (2011) (where defendant acquiesces in proceedings that occurred in his absence, he waives the right to claim that his absence was error or that his counsel was ineffective). Moreover, trial counsel's decision not to object to the introduction of the deposition testimony at trial falls within "the realm of trial tactics and strategy." *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998). "Review of counsel's performance must be highly deferential; tactical decisions amount to ineffective assistance only if so patently unreasonable that no competent attorney would have chosen them." *Id.* (citations omitted).

(c) Everhart argues next that his trial counsel was ineffective for failing to object to "prior bad acts" testimony from the victim's mother and from a responding police officer during trial, and for not requesting a limiting instruction before the evidence was presented and during the final jury charge. But regardless of whether a limiting instruction should have been requested on the prior difficulty evidence, as we discussed in Division 2 above, Everhart "has failed to show that there is a reasonable probability the outcome of his trial would have been different had trial court requested a limiting instruction." *Melson v. State*, 263 Ga. App. 647, 648 (3) (588 SE2d 822) (2003). Everhart was found not guilty of the counts pertaining to the

16

victim's brother. Thus, the jury was clearly able to distinguish the prior difficulty evidence relating to the victim's brother from evidence relating to the victim.

(d) Everhart also argues that his trial counsel should have objected on the basis of relevance, speculation, and prejudice to witness testimony about Everhart smoking marijuana. Everhart's trial counsel testified at the hearing on the motion for a new trial that he made the decision not to object because he thought the testimony was relevant and, in the broader context in which the testimony was provided, not prejudicial. We agree.

"The decision of whether to interpose certain objections is a matter of trial strategy and tactics. Errors in judgment and tactical errors do not constitute denial of effective assistance of counsel." *Abernathy v. State*, 299 Ga. App. 897, 903 (3) (a) (685 SE2d 734) (2009) (citations omitted). "In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Holmes v. State*, 271 Ga. App. 122, 124 (3) (608 SE2d 726) (2004) (citation omitted).

The witness, Ms. Smith, who Everhart had originally claimed injured the victim, testified regarding her interactions with the victim. She testified that on the evening that the victim and the victim's family, including Everhart, were staying with

17

her in Atlanta, she had picked up the victim in response to his cries because Everhart and the victim's mother were busy smoking marijuana outside. This testimony is relevant to disprove the version of events recounted to the hospital by Everhart.[3] Moreover, to the extent that evidence of Everhart's marijuana use was prejudicial (a doubtful proposition, we think), the jury had already heard far more prejudicial testimony about it from the victim's mother. Indeed, she testified that Everhart attacked the victim after the mother did not comply with Everhart's request for money to buy marijuana. *See Wilson v. State*, 306 Ga. App. 827, 833 (3) (b) (703 SE2d 400) (2010). Therefore the prejudice from the witness's testimony, if any, was minimal. *See, e.g.*, *Pennymon v. State*, 261 Ga. App. 450, 452 (2) (582 SE2d 582) (2003).

Everhart "has not shown that any ruling on an objection . . . would have been meritorious or would have led to a different result." *Adams v. State*, 327 Ga. App. 299, 303 (3) (758 SE2d 831) (2014). Everhart's trial counsel's decision not to object to the witnesses' testimony, therefore, did not constitute ineffective assistance of counsel. *See Fann v. State*, 275 Ga. 756, 757 (2) (571 SE2d 774) (2002); *Ross v. State*, 231 Ga. App. 793, 799 (9) (499 SE2d 642) (1998).

---

[3] The alleged beating occurred after Everhart, the victim, and the victim's family had returned home from this visit.

(e) Everhart argues that his trial counsel should have objected to DFCS witness testimony that she did not find Everhart's explanation for the delay in seeking treatment for the victim to be "satisfactory." Everhart argues that this testimony invaded the province of the jury. We disagree.

Although credibility of a witness "is a matter solely within the province of a jury[,]" this court need not exclude testimony simply because a defendant argues the testimony is tangentially related to credibility. *Noe v. State*, 287 Ga. App. 728, 730 (1) (652 SE2d 620) (2007) (citation omitted). In *Noe*, we observed that this rule prohibits "directly commenting upon the victim's credibility, *i.e.*, stating 'I believe the victim; I think the victim is telling the truth,' or testimony that implicitly goes to the ultimate issue for jury determination, *i.e.*, 'In my opinion, the victim was sexually abused.'" *Id.* (citation and punctuation omitted). Nothing Everhart complains of here even approaches the kind of testimony that *Noe* explains is prohibited.

The witness was asked about the delay in seeking medical treatment for the victim. She testified that Everhart explained to her that he delayed seeking treatment for the victim because he thought the victim might have the flu (which would not require a trip to the hospital) and because it was raining and he did not want anyone slipping on the steps. The witness was then specifically asked whether she found

19

Everhart's explanation for the delay satisfactory, and she replied that she did not. In context, this was not a statement of disbelief; indeed, the State made explicit before asking the question that the State was "not asking [her] to gauge [Everhart's] truthfulness," and on cross-examination, the witness stated that she "didn't draw any conclusions about [Everhart] misleading me." Rather, the DFCS witness simply testified that Everhart's explanation, even if true, did not constitute a sufficient reason for failing to seek immediate medical care for the victim. This was not commentary about credibility, and trial counsel's failure to make a meritless objection cannot support a claim of ineffective assistance of counsel. *See Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

(f) Finally, Everhart argues that trial counsel rendered ineffective assistance by failing to request a redaction of his video-recorded statement to the investigator. Although Everhart takes issue with several statements made by the investigator during the course of the video, he has failed to establish that he was prejudiced by them. Each statement of which Everhart complains was cumulative of other admissible evidence.

Everhart complains about the investigator's statement, "Whatever happened to that baby did not happen in Atlanta. The injuries to the child are older than what

20

happened in Atlanta. Those rib fractures did not happen there." But Dr. Greenbaum testified that the rib fractures were several weeks old, and that the severity of the injuries would have been such that they would have been noticed during such a trip.

Everhart also complains about the investigator's statement that the witness, who Everhart had originally claimed dropped the victim, "did not do this. She is out of the picture . . . . I have talked to her. It's got nothing to do with her." Similarly, Everhart complains about the investigator's comment about the victim having " . . . a bleeding brain, a swollen brain, liver lacerations, lung contusions in both of them, eight to ten bruises all over the body, the kid is having seizures, too many hemorrhages in the eyes to count, and nine rib fractures. That doesn't come from a girl . . . dropping the child by accident while changing the diaper." Again, Dr. Greenbaum testified as to the existence of these injuries, and the fact that they would not have originated from someone simply dropping the victim.

Because the testimony about which Everhart complains was cumulative, trial counsel's failure to request a redaction did not amount to ineffective assistance. *See, e.g.*, *Pope-Frazier v. State*, 331 Ga. App. 263, 270-71 (3) (a, b) (770 SE2d 654) (2015) (rejecting claims of ineffective assistance based on counsel's failure to object where testimony was cumulative of other admissible evidence); *Ashmid v. State*, 316

21

Ga. App. 550, 558 (3) (b) (2012) ("the failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel") (footnote and punctuation omitted).

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur.*