**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 26, 2020**

# In the Court of Appeals of Georgia

A19A2066. SEXTON-JOHNSON v. THE STATE.

BROWN, Judge.

A jury found Lakyia Sexton-Johnson guilty of felony obstruction of an officer (Count 1) and possession of an open container of alcoholic beverage while operating a vehicle (Count 3).[1] Sexton-Johnson appeals her convictions and the denial of her amended motion for new trial, contending that (1) the evidence was insufficient to support her convictions, (2) the trial court erred in denying her motion for directed verdict, (3) her conviction for Count 3 is void ab initio, and (4) she received ineffective assistance of counsel. For the reasons that follow, we affirm in part and reverse in part.

---

[1] The jury acquitted her of possession of marijuana.

Construed in favor of the verdict, see *Gordon v. State*, 337 Ga. App. 64 (785 SE2d 900) (2016), the record shows that on October 30, 2016, at approximately 1:30 a.m., Officer Hall of the Gwinnett County Police Department was traveling on Old Norcross Road, a five-lane road, when he observed a white vehicle stopped in the center turn lane, perpendicular to the roadway, with its rear sticking out into the eastbound lanes. Officer Hall could not recall if the vehicle was running, but he noticed that it did not have any lights on, and that the area was very dark. Officer Hall testified that he could not see the vehicle until he got close to it, and that if he had not been observant, he would have struck the vehicle. Concerned for the safety of the vehicle's occupants and other drivers, Officer Hall immediately stopped his marked patrol car behind the vehicle, positioning the patrol car so that it was blocking the two travel lanes, and turning on all of its lights to alert other drivers. Officer Hall, who was in uniform, then exited his patrol car and started walking toward the white vehicle. Sexton-Johnson, the driver of the white vehicle, immediately yelled, "'[w]hy the fuck are you pulling me over?'" As Officer Hall approached the vehicle, he could smell "an overwhelming amount of unburnt marijuana" and noticed two additional occupants in the vehicle, one in the passenger seat and another sitting behind the

2

driver's seat.[2] When Officer Hall told Sexton-Johnson that he had come upon the stopped vehicle and had not pulled her over, Sexton-Johnson explained that she went to a party to pick up her intoxicated friends and that one of the friends tossed her wig out the window as they were driving down the road; Sexton-Johnson stopped in order to retrieve the wig from the roadway. According to Officer Hall, a wig was found "a decent way behind [his] patrol vehicle."

Officer Hall requested names, dates of birth, and identification from the three occupants of the vehicle, and returned to his patrol car to run the information on his computer. At this point, the second officer, Officer Bezon, arrived on the scene. Officer Hall returned to the vehicle a second time to obtain additional information, and then again went back to his patrol car to run the information. When Officer Hall returned to the vehicle, he observed Officer Bezon standing at the vehicle. Officer Hall advised the back-seat passenger, who was clearly intoxicated, to step out of the vehicle because she was being arrested for giving a false name and date of birth. The passenger yelled, "'I'm not getting out of the fucking car.'" Officer Hall yelled a second time for the passenger to step out of the vehicle at which point she grabbed

_____

[2] According to the second officer who reported to the scene, Officer Hall also smelled the odor of alcoholic beverages coming from inside the white vehicle.

the passenger-side headrest in "almost [a] death grip" and braced herself against the door jamb. As both officers attempted to remove the passenger from the vehicle, Sexton-Johnson turned around and "sucker punched [Officer Hall] in the left eye with [her] closed right fist." Officer Hall immediately released the passenger and turned to see Sexton-Johnson attempting to punch him a second time. Officer Hall promptly exited the back of the vehicle and made his way to the front door of the vehicle just as Sexton-Johnson kicked open the door, striking him.

Throughout the incident, Officer Hall demanded that Sexton-Johnson exit the vehicle, while she hurled obscenities and stated that her passenger was not being taken to jail. In the meantime, Officer Bezon drew his taser and advised the passenger that if she did not exit the vehicle, she would be tased. Officer Bezon also radioed for assistance and multiple officers arrived on the scene. Officer Bezon testified that he did not have a clear view of the incident between Sexton-Johnson and Officer Hall, but was able to observe Sexton-Johnson "force her arm through the space in between the headrest of the driver's seat and part of the door — or part of the vehicle [and] looked like she was trying to force [Officer Hall] out of the vehicle or away from the vehicle." He did not see Sexton-Johnson punch Officer Hall, but confirmed that Officer Hall had injuries consistent with being punched in the face, including

4

swelling and "red puffiness to his eye." Officer Hall testified that within days, he had slight bruising to the left corner of his eye, "consistent with a black eye." Both Sexton-Johnson and her passenger were taken into custody without further incident. Both officers testified that Sexton-Johnson did not appear to be intoxicated, but that the back-seat passenger was intoxicated.

During a search of the vehicle, Officer Bezon recovered several items from the vehicle, including marijuana from a purse inside the vehicle, a bottle of Jose Cuervo wedged under the front passenger seat, and a bottle of Crown Royal wedged further under the front passenger seat. The seals on both bottles had been broken, and the bottle of Jose Cuervo was three quarters empty, while the bottle of Crown Royal was half empty. According to Officer Bezon, both bottles were "readily accessible" to both Sexton-Johnson and her back-seat passenger, but not the front-seat passenger.

1. Sexton-Johnson contends the evidence was insufficient to support her conviction for felony obstruction of a law enforcement officer because (a) the State failed to prove that Officer Hall was in the lawful discharge of his official duties and (b) the State failed to produce evidence of her criminal intent. "Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the

person of such officer . . . shall be guilty of a felony. . . ." OCGA § 16-10-24 (b). "A police officer is *not* discharging his lawful duty when he arrests an individual without reasonable or probable cause." (Citation and punctuation omitted; emphasis in original.) *Wagner v. State*, 206 Ga. App. 180, 182 (424 SE2d 861) (1992).

(a) Relying on *Duke v. State*, 257 Ga. App. 609 (571 SE2d 414) (2002), and *Buchanan v. State*, 259 Ga. App. 272 (576 SE2d 556) (2002), Sexton-Johnson contends that Officer Hall lacked probable cause to arrest her passenger and the State therefore failed to prove that Officer Hall was acting in the lawful discharge of his official duties. In support of this argument, Sexton-Johnson points out that the initial encounter was a first-tier, consensual encounter, during which a citizen is free to ignore the police or even flee.

There are three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." (Citation and punctuation omitted.) *Galindo-Eriza v. State*, 306 Ga. App. 19, 21-22 (1) (701 SE2d 516) (2010). "In a first-tier encounter, police may approach citizens, ask for identification, ask for consent to search, and otherwise freely

6

question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." (Punctuation omitted.) Id. at 22 (1). In such an encounter, a citizen is "completely free to exercise their right to ignore the police and leave. Indeed, a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Even running from police during a first-tier encounter is wholly permissible." (Citations and punctuation omitted.) Id. at 22-23 (1). A second tier encounter "occurs when [an] officer actually conducts a brief investigative *Terry*[3] stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 788) (2009). During a second-tier encounter, an officer also may request identification. See *Brown v. GeorgiaCarry.org*, 331 Ga. App. 890, 893 (770 SE2d 56) (2015) ("[i]n the course of a 'second-tier encounter' under *Terry* . . ., if an officer has a reasonable, articulable suspicion of criminal conduct, he may lawfully detain an individual for a brief time and request identification as part of the investigatory stop"), citing *State v. Beasley*,

---

[3] *Terry v. Ohio*, 392 U. S. 1, 21-22 (III) (88 SCt 1868, 20 LE2d 889) (1968).

7

270 Ga. App. 638, 639 (607 SE2d 245) (2004). Encounters can progressively escalate, and a first-tier encounter becomes a second-tier detention "once a reasonable person no longer believes that he [or she] is free to leave." *Walker*, 314 Ga. App. at 70 (1). See *State v. Preston*, 348 Ga. App. 662, 664 (824 SE2d 582) (2019) ("an encounter escalates from a first-tier consensual interaction to a second-tier investigatory detention only . . . when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the individual").

In this case, Officer Hall was lawfully present on the scene because he was concerned for the occupants of the white vehicle as well as passersby coming upon the precariously stopped vehicle, an interaction that was clearly a first-tier encounter. When Officer Hall smelled "an overwhelming amount of unburnt marijuana" and alcohol emanating from the vehicle, he was authorized to conduct a brief investigative *Terry* stop because he had a reasonable suspicion that the occupants of the vehicle may be involved in criminal activity. See *Whitmore v. State*, 289 Ga. App. 107, 109 (657 SE2d 1) (2008); *Harding v. State*, 283 Ga. App. 287 (641 SE2d 285) (2007). During the course of this second-tier encounter, Officer Hall also was authorized to request identification from the occupants, and when the back-seat passenger gave false information about her identity, the officer had probable cause

to arrest her. See *Morris v. State*, 220 Ga. App. 818, 819 (470 SE2d 458) (1996) (physical precedent only) (giving of false identity provides probable cause for arrest); *Stanley v. State*, 213 Ga. App. 95, 96-97 (443 SE2d 633) (1994). Accordingly, Sexton-Johnson's contention that Officer Hall lacked probable cause to arrest her passenger and that the State therefore failed to prove that he was acting in the lawful discharge of his official duties fails.

Sexton-Johnson contends that based on *Duke* and *Buchanan*, Officer Hall's testimony that the passenger gave him a false name is not sufficient to support a finding of probable cause; the State must produce some physical evidence to support probable cause, such as a radio transmission or a computer printout. Neither of these cases affect our conclusion.

According to Sexton-Johnson, the question here is whether Officer Hall had probable cause to arrest the passenger; the question in *Duke*, however, was whether the officer was justified in conducting a second-tier detention, i.e., whether the stop of the defendant was justified by a *reasonable suspicion of criminal activity*. 257 Ga. App. at 609-610. In *Duke*, the officer stopped the defendant's vehicle solely because of a 911 dispatch he heard over his police radio. Id. We reversed the denial of the defendant's motion to suppress, finding that the State had presented no evidence of

9

the source of the 911 dispatch or any specific facts on which the 911 dispatch may have been based. Id. at 610. We noted that the officer in *Duke* was not authorized to conduct a second-tier encounter because he did not observe any traffic violations or criminal activity; he simply stopped the defendant based upon a radio relay of an unspecified tip and nothing more. Id. Here, the State presented first-hand testimony that Officer Hall smelled marijuana and alcohol emanating from the vehicle. Thus, there were specific, articulable facts that gave rise to a reasonable suspicion of criminal activity, and, as we concluded above, Officer Hall was authorized to conduct the second-tier encounter and investigatory stop of the vehicle and its occupants. The facts of *Duke* are inapposite to this case.

Sexton-Johnson contends that in *Buchanan*, "this Court held that the State must produce some physical evidence to support probable cause for a defendant's arrest, such as a radio transmission . . . or a National Crime Information Center printout." This is not a correct interpretation of our holding. In *Buchanan*, we held that probable cause to arrest the defendant existed once the officer learned of an outstanding arrest warrant. 259 Ga. App. at 274. The officer learned of the warrant when he asked dispatch to check the defendant's name on the State computer and was advised by dispatch that a warrant was outstanding. Id. at 273. The defendant had appealed the

10

denial of his motion to suppress, arguing in part that his arrest was illegal because no warrant was ever produced. Id. at 274. In rejecting this argument, we intimated that radio transmissions and NCIC printouts are the types of trustworthy, reliable information upon which an officer may rely in establishing probable cause for an arrest; we did not hold that the State must produce some physical evidence to support probable cause for a defendant's arrest such as a radio transmission or an NCIC printout. Id. As we explained in *State v. Edwards*, 307 Ga. App. 267 (704 SE2d 816) (2010), "if an officer stops an individual outside his home, requests a computer check on the individual, and is told that there is an outstanding arrest warrant for the individual, the officer may lawfully arrest the individual. . . ." Id. at 271-272. In this case, Officer Hall testified that when he ran a check of the passenger's information on the computer in his patrol car, it came up as false. The information Officer Hall gleaned from the computer report was enough to establish probable cause for the passenger's arrest. While it may not have been sufficient to authorize a conviction of the passenger for giving a false name, that issue is not before us. See *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176) (1996) ("[w]hile the NCIC printouts would not be sufficient to authorize *conviction*, they have been held to be reliable enough to

11

underlie the reasonable belief which is needed to establish probable cause for arrest")

(citation and punctuation omitted; emphasis in original).

(b) Pointing out that felony obstruction of an officer is a specific intent crime, Sexton-Johnson also asserts that there was no evidence that she knew the passenger gave false information and that, therefore, the State failed to prove that she knowingly and willfully acted with criminal intent to hinder Officer Hall when he attempted to arrest the passenger. Sexton-Johnson asserts that the State's evidence failed to exclude the reasonable hypothesis that she was simply trying to defend her passenger when officers attempted to forcibly remove her from the vehicle. This argument is meritless.

> The intention with which an act is done is peculiarly for the jury. It is often difficult to prove with direct evidence an individual's intent as it existed at the time of the act for which they are being prosecuted. Therefore, it is often necessary to prove such intent through the use of circumstantial evidence. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this. A jury may infer that a person acted with criminal intent after considering the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. In order to support a conviction, such circumstantial evidence does not have to exclude every possible hypothesis other than the defendant's guilt, but only reasonable hypotheses. Whether a hypothesis is reasonable is a question for the

12

jury, and such finding will not be disturbed on appeal unless the guilty verdict is insupportable as a matter of law.

(Citations and punctuation omitted.) *Clowers v. State*, 324 Ga. App. 264, 266 (2) (a) (750 SE2d 169) (2013). Here, there was sufficient evidence from which the jury could find that Sexton-Johnson knowingly and willfully obstructed Officer Hall in the lawful discharge of his official duties. Sexton-Johnson and her two passengers all provided their names, dates of birth, and identification to Officer Hall, and Officer Hall testified that after he returned from running their information through his computer, he twice advised the backseat passenger — in the presence of Sexton-Johnson and the other passenger — that she was being arrested for giving a false name. Officer Hall also testified that during the incident — and *after* he twice advised the backseat passenger that she was being arrested for giving a false name — Sexton-Johnson expressly stated that her passenger was not being taken to jail.

2. Sexton-Johnson contends that the trial court erred in denying her motion for directed verdict on the felony obstruction charge because the State's evidence was insufficient to prove that Officer Hall had probable cause to arrest her passenger for giving a false name and date of birth. In particular, Sexton-Johnson contends that the State failed to produce substantive evidence of the alleged false name and date of

13

birth given by the passenger or her correct name and date of birth. Given our conclusion in Division 1, supra, the trial court did not err in denying Sexton-Johnson's motion for directed verdict.

3. Sexton-Johnson contends that trial counsel rendered ineffective assistance by failing to pursue a motion to quash the open container charge, asserting that it was subject to a general demurrer because she could admit all allegations of the charge and not be guilty of a crime.[4] In order to prevail on a claim of ineffective assistance of counsel,

> an appellant must show not only that [her] counsel's performance was deficient but also that the deficiency so prejudiced [her] as to create a reasonable probability that but for counsel's errors, the outcome of the trial would have been different. Failure to satisfy both requirements is fatal to an ineffectiveness claim. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, we uphold the court's factual findings unless they are clearly erroneous, and review the court's legal conclusions de novo.

(Citations and punctuation omitted.) *Everhart v. State*, 337 Ga. App. 348, 353 (3) (786 SE2d 866) (2016).

---

[4] The record reflects that trial counsel filed a demurrer prior to trial, but admitted during the motion for new trial hearing that he did not pursue the demurrer or a motion to quash because he did not see any legal basis for doing so.

14

Count 3 of the indictment charged Sexton-Johnson

> with the offense of POSSESSION OF OPEN CONTAINER OF ALCOHOLIC BEVERAGE WHILE OPERATING A VEHICLE (O.C.G.A. 40-6-253) for the said accused . . . did possess an open container of an alcoholic beverage . . . while operating a vehicle . . . said container was not in the possession of a passenger and was not located in a locked glove compartment, locked trunk, or other locked non-passenger area of the vehicle. . . .

Sexton-Johnson contends that "[o]peration of a vehicle contemporaneous with possession of the open container is *not* an essential element of the crime." She intimates that in order for the State to have charged her sufficiently with an open container violation under OCGA § 40-6-253, the State needed to allege that she possessed the open alcoholic beverage containers in the passenger area of the motor vehicle on the "*roadway or shoulder of [a] public highway.*" OCGA § 40-6-253 (b) (1) (B) provides that "[a] person shall not . . . [p]ossess any open alcoholic beverage container in the passenger area of any motor vehicle which is on the roadway or shoulder of any public highway." We agree.

> A general demurrer challenges the validity of an indictment by asserting that the substance of the indictment is legally insufficient to charge any crime. In other words, a general demurrer is essentially a claim that the indictment is fatally defective and, therefore, void,

15

because it fails to allege facts that constitute the charged crime or any other crime, including a lesser included offense of the charged crime.

(Citation and punctuation omitted.) *Everhart*, 337 Ga. App. at 353-354 (3) (a). See also *Coleman v. State*, 318 Ga. App. 478, 479 (1) (735 SE2d 788) (2012). A general demurrer "should be granted only when an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law." (Citation and punctuation omitted.) *Poole v. State*, 326 Ga. App. 243, 247 (2) (a) (756 SE2d 322) (2014).

> The Sixth Amendment to the United States Constitution states that criminal defendants shall "be informed of the nature and cause of the accusation against them." It is established in Georgia that satisfaction of this fundamental principle requires that a criminal indictment which does not recite language from the Code must allege every essential element of the crime charged.

(Citation and punctuation omitted.) *Everhart*, 337 Ga. App. at 354-355 (3) (a). As we reiterated in *Everhart*, "there can be no conviction for the commission of a crime an essential element of which is not charged in the indictment. If an accused individual can admit to all of the allegations in an indictment and still be not guilty of a crime,

16

then the indictment generally is insufficient and must be declared void." (Punctuation omitted.) Id. at 355 (3) (a).

Here, Sexton-Johnson could have admitted all the allegations in Count 3 and still not be guilty of a crime. Indeed, it might be possible for one to possess an open container of alcoholic beverage while operating a motor vehicle in a parking lot or driveway and not be guilty of violating OCGA § 40-6-253. Had trial counsel filed a motion to quash the open container charge, asserting that it was subject to a general demurrer, the trial court would have been required to dismiss the charge. "Accordingly, [Sexton-Johnson's] trial counsel's failure to challenge this count constitutes deficient performance, contributed to [her] conviction on a void count, and therefore harmed [her] and prejudiced [her] case." *Everhart*, 337 Ga. App. at 355 (3) (a). Sexton-Johnson's conviction on Count 3 is therefore reversed.[5] Given this ruling, we need not address Sexton-Johnson's claim that her conviction on Count 3 was void ab initio.

---

[5] While our decision renders moot any sentencing issues with regard to Count 3, we point out that the 12-month sentence imposed by the trial court was improper as the statute provides that the maximum fine for a violation shall not exceed $200. See OCGA § 40-6-253 (c). See also *Brogdon v. State*, 299 Ga. App. 547, 552-553 (2) (683 SE2d 99) (2009); *Chastain v. State*, 231 Ga. App. 225, 227-228 (4) (498 SE2d 792) (1998).

4. Although Sexton-Johnson's conviction on Count 3 is reversed, the State may retry her without violating the Double Jeopardy Clause. See, e.g., *Lee v. United States*, 432 U. S. 23, 33 (II) (C) (97 SCt 2141, 53 LE2d 80) (1977); *Conley v. State*, 85 Ga. 348 (1) (11 SE 659) (1890). Accordingly, we must address Sexton-Johnson's claim that the evidence was insufficient to sustain her open container conviction. In this regard, she argues that in order to prove that she unlawfully possessed an open container of alcohol while operating a vehicle, the State was required to show more than mere spatial proximity to the open containers; the State also was required to show that she had knowledge of the presence of open containers in the vehicle. We disagree.

As set out above, OCGA § 40-6-253 (b) (1) prohibits the possession of any open alcoholic beverage container in the passenger area of any motor vehicle which is on the roadway or shoulder of a public highway. "The traffic offenses defined in Chapter 6's Rules of the Road are 'strict liability' offenses, meaning that they can be committed without a culpable mental state." *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012). See also *Queen v. State*, 189 Ga. App. 161, 163 (1) (c) (375 SE2d 287) (1988) (explaining that certain "'strict criminal liability' motor vehicle *safety* statutes . . . can be violated . . . without a showing of *mens rea* or guilty knowledge

18

on the part of the violator[;] although it must be shown that the defendant committed the acts or omissions for which he is being held responsible, the requirement of proving mental fault or mens rea is dispensed with") (citation omitted; emphasis in original). We conclude that the jury was authorized to find Sexton-Johnson guilty beyond a reasonable doubt of violation of the open container law based upon evidence of the odor of alcohol emanating from the vehicle, Officer Hall's testimony that Sexton-Johnson told him that she had just picked up her passengers from a party and that both of them were intoxicated, the presence of two bottles of alcohol, both with their seals broken and the contents partially removed, and Officer Bezon's testimony that he located the bottles wedged under the front-passenger seat within arm's reach of Sexton-Johnson. See OCGA § 40-6-253 (a) (2). See, e.g., *Firsanov v. State*, 270 Ga. 873, 874 (1) (513 SE2d 184) (1999).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Mercier, J., concur*.